THE PEOPLE, APPELLANT, *v.* DOUGLAS GUNN, RE-
SPONDENT.

MUNICIPAL CORPORATIONS — PROCEEDING TO TEST VALIDITY OF CHARTER —
PARTIES. — Whenever a proceeding is such as must test and determine
the validity of a municipal charter as such, the municipality, real or
pretended, must be made a party.

ID. — QUO WARRANTO AGAINST MAYOR — ATTACK UPON FREEHOLDERS'
CHARTER — CITY A NECESSARY PARTY. — In an action in the nature of
*quo warranto,* where nominally the proceeding is to oust the defendant
from the office of mayor, but it is apparent on the face of the complaint
that the real object of the action is to determine the right of a city to
exercise the franchise of a municipal corporation under a freeholders'
charter claimed to have been adopted by the people and approved by
the legislature, and the complaint attempts to make no case against the
defendant except through the alleged invalidity of the charter, the mu-
nicipality is a proper and necessary party defendant to the proceeding.

ID. — PLEADING — SUFFICIENCY OF COMPLAINT — VIOLATION OF CONSTITU-
TION IN ADOPTING CHARTER. — In such action, a complaint alleging
that the board of freeholders was elected by only a portion of the qualified
voters of the city; that a portion of the city was omitted in calling the
election; that no duplicate of the proposed charter was delivered or re-
turned to the mayor or recorder of the county, as required by the con-
stitution; that the proposed charter was not published as required
thereby; and that the election for its adoption and ratification was called
and held less than the required number of days after the completion of
the publication, contrary to the constitution, — states a cause of action for
the annulment of the charter, and the ousting of the mayor from office,
if the proper parties are made defendants.

ID. — DEFECTS IN MUNICIPAL ORGANIZATION — DISTINCTION BETWEEN MAN-
DATORY AND DIRECTORY PROVISIONS. — Decisions holding that defects
in a municipal organization are insignificant and immaterial, when relat-
ing to procedure under statutes held to be merely directory, have no ap-
plication to procedure under constitutional provisions expressly declared
to be mandatory and prohibitory.

ID. — CONSTITUTION MANDATORY AND PROHIBITORY — MEASURE OF POWER
— CONDITIONS PRECEDENT TO LEGISLATION. — The provisions of the
constitution of this state relating to the organization of municipal cor-
porations are mandatory and prohibitory, and the mode of procedure
required thereby is the measure of power, and the acts required by it to
be performed are conditions precedent and necessary to the validity of
the legislation which it authorizes, whether that legislation be by the
people of a municipality under article 11, or by the senate and assembly
under article 4, of the constitution.

ID. — POWER OF LEGISLATURE — APPROVAL OF FREEHOLDERS' CHARTER —
DETERMINATION OF REGULARITY — JUDICIAL POWER. — The legislature

does not exercise the law-making power in approving a freeholders' charter by joint resolution, and cannot conclusively determine whether or not the municipal authorities and people of the city adopting the charter have proceeded regularly in its framing and adoption; and it devolves upon the courts to determine whether or not the constitutional conditions precedent to its validity have been complied with.

Id. — Election of Board of Freeholders — Failure to Open Polls — Charter not Affected. — If all subsequent provisions of the constitution were complied with, it may be too late, after an election approving a charter recommended by the board of freeholders, to attack the charter, on the ground that polls were not opened in certain precincts at the election of freeholders, especially if it is not contended or shown that the result could or would have been changed had such polls been open.

Id. — Election for Charter — Failure to Return or Record Charter — Insufficient Publication — Improper Time of Election — Invalid Charter. — An election for the adoption of a charter recommended by a committee of freeholders is invalid, if it appears that no duplicate of the proposed charter was delivered or returned to the mayor or to the recorder of the county, and that the election was held without sufficient publication of notice, and in less than the required number of days after completion of the publication, as provided by the constitution; and the charter adopted at such election is illegal and void.

Appeal from a judgment of the Superior Court of San Diego County.

The facts are stated in the opinion of the court.

*Attorney-General Johnson, Hunsaker & Britt,* and *Stanly, Stoney & Hayes,* for Appellant.

The constitutionality or validity of the statute, charter, or other authority under which a person assumes to act as an officer may be controverted in a proceeding of the nature of the present, instituted against such person to oust him from the office usurped by him, without joining as a party the municipality whose agent he unlawfully assumes to be. (High on Extraordinary Legal Remedies, sec. 695; *Hinze* v. *People,* 92 Ill. 407, 414; *Stephens* v. *People,* 89 Ill. 337; *Chesshire* v. *People,* 116 Ill. 493.) The usual and legal course is to proceed against the individual officers who it is claimed have usurped the franchise as complained of. (*City of Chicago* v. *People,* 80 Ill. 512; *People* v. *Carpenter,* 24 N. Y. 86; *People* v.

*Gladwin,* 41 Mich. 648; *Attorney-General* v. *Page,* 38 Mich. 286; *People* v. *Bennett,* 29 Mich. 451; 18 Am. Rep. 107; *People* v. *Maynard,* 15 Mich. 463; *State* v. *Coffee,* 59 Mo. 59, 67; *State* v. *McReynolds,* 61 Mo. 203; *State* v. *Parker,* 25 Minn. 215; *People* v. *Draper,* 15 N. Y. 532; *Commonwealth* v. *Meeser,* 44 Pa. St. 341, 343; *State* v. *Independent School District,* 44 Iowa, 227; *State* v. *Parsons,* 40 N. J. L. 1; *Commonwealth* v. *Fowler,* 10 Mass. 290.) In this state the decisions of the supreme court show that the uniform practice has been, not to join as a party the municipality or other corporation or *quasi* corporation in the service of or under which a defendant in *quo warranto* claims to exercise a franchise or hold an office, even though the existence of such corporate entity or of its asserted prerogatives is involved in the issues to be determined. (*People* v. *Stanford,* 77 Cal. 360; *People* v. *Henshaw,* 76 Cal. 436; *People* v. *La Rue,* 67 Cal. 526; *People* v. *Parks,* 58 Cal. 624; *People* v. *Horsley,* 65 Cal. 381; *People* v. *Selfridge,* 52 Cal. 331; *People* v. *Chambers,* 42 Cal. 201; *Brooks* v. *Fischer,* 79 Cal. 173; *Ex parte Ah You,* 82 Cal. 339.) The exclusion of part of the city from the established election precincts thereof was sufficient to vitiate the subsequent proceedings. (*Fort Dodge School District* v. *Wahkansa,* 17 Iowa, 85; Cooley on Constitutional Limitations, 616, and cases cited; *State* v. *Fitzgerald,* 37 Minn. 26; *People* v. *Maynard,* 15 Mich. 463, 469; Const. Cal., art. 11, sec. 8.) The fact that no copy or duplicate of the charter was delivered or returned to the mayor of the city, or to the recorder of the county, that the proposed charter was never published for the period of twenty days, and that the election upon the question of ratification was held on a day less than thirty days after the completion of publication, are of the essence in the adoption of an instrument of this character. (Const. Cal., art. 11, sec. 8; *People* v. *Riverside,* 66 Cal. 288; *Harding* v. *R. R. Co.,* 65 Ill. 90; *State* v. *Young,* 4 Iowa, 561; *McKune* v. *Weller,* 11 Cal.

49; McCrary on Elections, sec. 145.)    The questions at-
tempted to be passed upon in the recital to the preamble
of the statute are judicial questions.    (See *Weill* v. *Ken-
field*, 54 Cal. 111, 117; *Jones* v. *Hutchinson*, 43 Ala. 721;
Cooley on Constitutional Limitations, 130 et seq.)    Re-
citals in a statute are not conclusive of the matters
recited, unless for the purpose of interpreting the mean-
ing of the act.    (Endlich on the Interpretation of Stat-
utes, sec. 375, and cases cited.)    The charter here is not
an act of the legislative department, and the recitals in
question are entirely *dehors* the matter before the legis-
lature, which was simply the ratification or rejection of
a document submitted to it for that purpose.    (Const.
Cal., art. 11, sec. 8; *Brooks* v. *Fischer*, 79 Cal. 173.)

*James P. Goodwin, M. H. Luce, H. L. Titus,* and *Garber,
Boalt & Bishop,* for Respondent.

An information or other proceeding in the nature of
*quo warranto* to test and determine the validity of a
municipal charter must be directed against the *de facto*
or pretended corporation as the real party interested,
and not against the officers thereof.    (High on Extraor-
dinary Legal Remedies, 2d ed., sec. 696; *People* v. *River-
side*, 66 Cal. 288; *People* v. *Flint*, 64 Cal. 49; *State* v. *North*,
42 Conn. 79; *State* v. *Atlantic Highlands*, 50 N. J. L.
457; *State* v. *Bradford*, 32 Vt. 50; *State* v. *Brown*, 31
N. J. L. 355; *State* v. *Taylor*, 25 Ohio St. 279; *State* v.
*Atchison etc. R. R. Co.*, 24 Neb. 143; 8 Am. St. Rep. 164;
*People* v. *Whitcomb*, 55 Ill. 172; *Regina* v. *Taylor*, 11 Ad.
& E. 949; *Regina* v. *Jones*, 8 L. T., N. S., 503.)    Where
the legislature is authorized to enact a particular statute
only in a certain contingency or upon the existence of
certain facts, the power to determine whether or not
such contingency has arisen or such facts exist is com-
mitted to the legislature, unless the constitution provides
otherwise, and its passage of such statute, with or with-
out recitals to that effect, will be presumed by the courts

to have been based upon sufficient evidence of the existence of such contingency or facts, and will be deemed conclusive against any inquiry into the actual existence thereof. (Cooley on Constitutional Limitations, 5th ed., 222, 223; *De Camp* v. *Eveland,* 19 Barb. 81, 89; *Rumsey* v. *People,* 19 N. Y. 41, 54; *People* v. *Devlin,* 33 N. Y. 269, 279; 88 Am. Dec. 377; *Eld* v. *Gorham,* 20 Conn. 7, 16; *Lusher* v. *Scites,* 4 W. Va. 11, 14; *Martin* v. *Mott,* 12 Wheat. 19, 29–31; *Luther* v. *Borden,* 7 How. 42, 43; *Hall* v. *Steele,* 82 Ala. 562; *Hare* v. *Kennerly,* 83 Ala. 608; *Sherman* v. *Story,* 30 Cal. 253; 89 Am. Dec. 93.) Excluding legal voters from participating in an election will not vitiate the election, unless it affirmatively appears that the excluded voters were desirous of voting, and that their votes might have changed the result. (Paine on Elections, secs. 514 et seq., citing numerous cases.) Defects and omissions in giving notice of an election will not vitiate it, if the election was held, and there is nothing to show that a sufficient number of voters were prevented from attending or voting, to change the result. (*People* v. *Hoge,* 55 Cal. 619; *Dishon* v. *Smith,* 10 Iowa, 212, 217, 219; *Page Co.* v. *American etc. Co.,* 41 Iowa, 115; *Commonwealth* v. *Smith,* 132 Mass. 289; Paine on Elections, sec. 389, 399.)

Fox, J. — This action is brought under chapter 5, title 10, part 2, of the Code of Civil Procedure, to remove the respondent from the office of mayor of the city of San Diego, it being charged that respondent has usurped and intruded into and unlawfully exercises such office. Judgment went for defendant on demurrer to the complaint, and from such judgment the plaintiff appeals.

The allegations of the complaint necessary to be considered here are: 1. That the city of San Diego is, and at all times mentioned in the complaint has been, a municipal corporation of the fourth class, organized, created, and existing under and by virtue of the general law

providing for the organization, incorporation, and gov-
ernment of municipal corporations, approved March 13,
1883, and the act to provide for the classification of
municipal corporations, approved March 2, 1883; 2.
That the defendant claims to have been elected mayor
of said city at a pretended election held on the first
Tuesday after the first Monday in April, 1889, and at
which pretended election he received a majority of the
votes cast for mayor; and that, claiming title to the office
by virtue of such pretended election, and not otherwise,
or by other authority, he has obtruded himself into, and
ever since withheld, and now usurps, the said office of
mayor, and exercises the functions and duties thereof.
3. It then proceeds to show that said pretended election
was one claimed to be held under and in pursuance of
the provisions of a charter pretended to have been
framed and adopted under section 8, article 11, of the
constitution, and approved by a joint resolution of both
houses of the legislature, and sets out facts which show
that such charter was not in fact framed or adopted in
accordance with the requirements of said or any section
of the constitution, and points out numerous defects in
the proceedings, by reason whereof it is claimed, and if
the allegations of the complaint are true (and by the de-
murrer they are admitted to be true) it is correctly
claimed, that said pretended charter never did become
a valid law, and furnished no authority for the holding
of such election.

The complaint is demurred to on two grounds: 1.
That there is a defect of parties defendant, in that the
city of San Diego is a necessary and proper party de-
fendant; 2. That the complaint does not state facts suffi-
cient to constitute a cause of action.

1. The authorities are by no means uniform upon the
first point made upon this demurrer. Several cases are
cited from other states, where proceedings which, in effect,
would determine the legal existence of a municipal cor-

poration have been sustained without making the municipalty a party, and that where, as here, the question was directly raised. But we think that the weight of authority in sister states and in England, and the better reasoning, is, that whenever the proceeding is such as must test and determine the validity of a municipal charter as such, the municipality, real or pretended, must be made a party. It may be otherwise where the only effect of the proceeding will be to determine the right of some particular person to exercise certain powers under the charter. In this state we are cited to no case, and know of none, where the question of corporate existence was involved, and the question of parties was raised, in which the alleged corporation was not made a party in the first instance, or if not, the court required it to be done, except it be that of *People* v. *Stanford,* 77 Cal. 360, and that was a case of a private corporation. In that case it was expressly held that it would be different in the case of a municipal corporation; that in such a case "it would seem to be proper that a defendant claiming to be a city, . . . . and acting as such, should be made a party in an action to determine the validity thereof." In *People* v. *Riverside,* 66 Cal. 288, the municipality was made a party, and held to be the proper party to the proceeding. In *People* v. *Flint,* 64 Cal. 49, a case of a private corporation, the question was, as here, whether there ever had been a legal incorporation, and the court expressly held that the pretended corporation must be made a party defendant. In *Brooks* v. *Fischer,* 79 Cal. 173, *People* v. *Parks,* 58 Cal. 624, and *People* v. *La Rue,* 67 Cal. 526, the question of corporate existence was incidentally involved, but in neither of them was any question made as to whether or not the proper parties were before the court. In *People* v. *Henshaw,* 76 Cal. 436, and *Ex parte Ah You,* 82 Cal. 339, the question of corporate existence was not involved.

In this case, while nominally the proceeding is to

oust the defendant, Gunn, from the office of mayor, it is apparent on the face of the complaint that the real object of the action is to determine the right of the city of San Diego to exercise the franchise of a municipal corporation under a freeholders' charter, claimed to have been adopted by the people and approved by the legislature. The complaint attempts to make no case against the defendant, except as it is made through the alleged invalidity of such charter. This being its purpose, we are of opinion that the municipality was a proper and necessary party defendant to the proceeding, and hold that the demurrer was properly sustained on that ground.

This conclusion necessarily leads to an affirmance of the judgment of the court below, but as new proceedings may be instituted, making the city a party, we deem it proper to state our views on the second ground of the demurrer.

2. In order to show that the charter of 1889 never did become a valid law, and supersede the law under which the corporation theretofore existed, and consequently that the election of April, 1889, was illegal and void, the complaint alleges,—1. That instead of causing the board of freeholders to be elected by the qualified voters of said city, the city council caused them to be elected by only a portion of said qualified voters; that in calling the election therefor, a portion of the city containing a population of more than twelve hundred, including three hundred qualified voters, was omitted, and given no voice in said election; 2. That when such proposed charter was prepared, no copy or duplicate thereof was delivered or returned to the mayor, as required by the constitution; 3. That no copy of such charter was delivered or returned to the recorder of the county, as required by the constitution; 4. That said proposed charter was not published in two daily papers of general circulation, or in any daily or other paper, of said city for at least twenty days, as required by the constitution; 5. That the

election for the adoption and ratification of said proposed
charter was called and held less than thirty days after
the completion of such publication, contrary to the re-
quirements of the constitution.

· It may be that none of these alleged defects exist in
fact, but for the purposes of the demurrer these allega-
tions must be taken as true. So taking them, the com-
plaint very clearly states facts sufficient to constitute a
cause of action, if brought against the proper party.

Responsive to this ground of demurrer, the respond-
ent claims, first, that the alleged defects are insignificant
and immaterial, and cites many authorities which, it is
claimed, support that proposition. But the misfortune
is, that they are not in point. They all relate to pro-
cedure under statutes held to be merely directory. In
this case the procedure was under constitutional pro-
visions expressly declared to be *mandatory and prohibi-
tory.* Under such provisions the mode is the measure
of power. The acts required by the constitution to be
performed are conditions precedent, and necessary to
the validity of the legislation which it authorizes, whether
that legislation be by the people of a municipality under
article 11, or by the senate and assembly under article 4.

The city of Riverside attempted to incorporate under
the general statute on that subject. With reference to it
this court held that " the right to enjoy and exercise the
franchise of a municipal corporation depends on a com-
pliance with the provisions of the statute which author-
izes the organization of such corporations." (*People* v.
*Riverside*, 66 Cal. 291.) And this in discussing alleged
omissions similar to and not more important than
those alleged to have taken place in the present case.
If this strict compliance is required with reference to
the provisions of a statute passed by the legislature,
around which are thrown none but the ordinary safe-
guards of construction, — which in fact are to be con-
strued liberally, for the accomplishment of the object

and the promotion of justice, — how much more strict should be the compliance with the requirements of a constitution which on its face declares that all its provisions are mandatory and prohibitory, unless otherwise expressly provided? We are not at liberty to say that any constitutional prerequisite to the validity of a law is of no practical service, or to consider the policy of a provision when its language seems plain and positive. (*Weill* v. *Kenfield*, 54 Cal. 117.) The language of Judge Cooley in his work on Constitutional Limitations, page 78, quoted and adopted in *State* v. *Rogers*, 10 Nev. 253, is directly in point, and shows that, even in the absence of a clause making its provisions mandatory and prohibitory, the courts will not hold the provisions of a constitution to be directory or unessential, but will rather hold that wherever it prescribes a mode, that mode is the measure of power.

It is claimed by respondent that the question of whether or not these alleged defects exist, or the proceedings in the framing and adoption of the charter were regular, has been conclusively determined by the legislature in its preamble to the joint resolution of the two houses in approving the same; and authorities are cited which are claimed to support this contention. But in this case, as in the other, the authorities are not in point. They relate to matters of legislative discretion, and to cases where the legislature is authorized to pass laws only in certain contingencies, — such as acts for the creation of new counties, when the constitution provides that no county shall be created with less than a certain prescribed population, and the like. In such cases it has been held that the determination of the legislature upon the question of whether the contingency had happened which authorized the passage of the act was conclusive. And in all cases it may be said that, unless there is a constitutional inhibition, the determination of the legislature upon the question of the policy of the passage of

an act is conclusive. But even in such cases the courts
are not concluded from inquiring into the regularity
and constitutional sufficiency of the *mode* adopted by the
law-maker in the passage of the act.

In this case the legislature was not the law-maker;
it did not frame or pass the law. It simply passed a
resolution approving it. It was not charged with any
duty, and to it was not delegated any power, either in
framing or adopting the law. Its act was not the enact-
ment of a statute. It was not called upon or authorized
by the constitution to adjudicate upon the question of
whether the law-makers — the municipal authorities and
people of San Diego — had proceeded regularly in the
framing and adoption or passage of the law or not.
That was a judicial question, the determination of which
belonged to the judicial department of the government,
and to meet which the makers of the law — those upon
whom the proceedings prescribed by the constitution
devolved — were bound to proceed at their peril. The
legislature knew nothing, and under the law could know
nothing, of the charter until it was presented to the
two houses, not for enactment, but for approval, by those
upon whom the power and duty devolved of framing and
adopting it. When so presented, it brought with it the
presumption of regularity in what had gone before, and
the legislature exercised, as to it, simply the same power
which is delegated to the governor with reference to bills
framed and passed by the legislature, — that of approval
or rejection. It had no more judicial power to inquire
into and determine the regularity or sufficiency of the
precedent steps in the history of the framing and adoption
of the measure than the governor would have to question,
inquire into, and adjudicate upon the history of a legis-
lative bill when it came to him, duly certified, for his
approval or rejection. The preamble neither added to
nor detracted from the resolution of approval. The con-
ditions precedent, which are here alleged to have been

violated, were all acts to be performed by the law-maker not facts to be found by the bodies whose sole function was to approve or reject the law. It now remains for the courts to determine (since the matter is disputed), upon proof of the facts, whether these conditions were performed or not.

We are not prepared to say that the first of the objections above noted under this point would of itself be sufficient to defeat the charter, if all the other requirements of the constitution have been complied with. The appointment of freeholders may be likened to the selection of a committee to prepare and draught an instrument to be presented for the consideration and approval or rejection of the body making the appointment. The result of their labors is without force or value until, having been duly authenticated, and so hedged about as to protect it, in two separate places, from alteration or change, then accurately published in the manner and for the time required by the constitution, so as to give it the largest publicity, and bring it home to the attention of the people to be affected thereby, and, thirty full days after such publication, given to the people to digest the same and deliberate thereon, and then, at an election at which all the electors to be affected by its provisions are given an opportunity to vote, it has been approved by a majority of the electors voting at such election. Then, and not till then, has it been given such vitality as to entitle it to be presented to the legislature. If there approved by a majority vote of the members of each house, it then becomes the organic law of the municipality, "superseding any existing charter and any amendments thereof, and all special laws inconsistent with said charter." If all the subsequent proceedings have been in conformity to the constitution, it may then be too late to attack the charter on the ground that provision had not been made for the opening of polls in a given precinct of the city, at the election of the freeholders

who draughted the charter, especially if it be not shown (and it is not here contended) that the number of voters thus deprived of the opportunity to vote at that election was sufficient to have changed the result. Even then it is questionable whether the attack ought not to have been made before the submission of the charter, and in the form of proceedings to contest the validity of the election.

But the other points of objection to the validity of this charter are, in our judgment, if shown to be founded upon fact, vital, and for that reason the demurrer on this ground should have been overruled, and the defendant put to answer.

The demurrer being sustained, however, on the first ground, the judgment must be affirmed, and it is so ordered.

Beatty, C. J., and Paterson, J., concurred.

McFarland, J., concurring. — I concur in the judgment, and in all that is said in the opinion of Mr. Justice Fox, except in these particulars: 1. I think that the language of the opinion is too strong on the subject of *strict* compliance with the provisions of the constitution relating to freeholders' charters. Because the constitution declares the provisions to be mandatory, it does not follow that a *substantial* compliance with them is not sufficient. The proceedings for the adoption of a charter will probably never be so literally perfect that a critical and hostile eye cannot detect in them some slight defect or irregularity, which ought not to be considered fatal. Whether or not there has been a sufficient compliance with the constitution in any particular case must depend on the particular facts of that case. In the case at bar some of the alleged failures in the proceedings are clearly immaterial. 2. As to the alleged failure to give certain citizens an opportunity to vote for the free-

holders, I think that matter should stand upon the same
footing as other elections; that is, that it should be
shown that the votes of those excluded might have
changed the result. In all other respects I concur in the
opinion of Justice Fox.