[Crim. No. 413.   In Bank.—March 25, 1898.]

### Ex parte ANDREW SPARKS on Habeas Corpus.

POLICE COURT OF SACRAMENTO — NEW CHARTER UNDER CONSTITUTION. — The adoption and approval of the new freeholders' charter of the city of Sacramento, which took effect January 8, 1894, operated, not *ex proprio vigore*, but by virtue of the provision of the constitution that such a city charter "shall become the organic law thereof, and supersede any existing charter, and all amendments thereof, and all laws inconsistent with such charter," to abolish the police court of that city established by amendment of 1878 to its former charter.

ID.—POLICE COURT UNDER NEW CHARTER NOT EFFECTIVE. — A police court could not be created or continued under the new charter of the city of Sacramento by the mere approval by the legislature of the freeholders' charter that had been adopted by the municipality, such approval not having any effect or operation as an act of the legislature, which did not frame or pass the law.

ID.—CONSTITUTIONAL AMENDMENT OF 1896.—The amendment of 1896 to article XI of the constitution, adding section 8½, in which it is declared that it is competent in freeholders' charters to provide for police courts and fix their jurisdiction, is not retroactive but prospective in its nature as being a grant of authority, and has no application to charters previously adopted.

WRIT of *habeas corpus* from the Supreme Court to the sheriff of Sacramento County to test the jurisdiction of the Police Court of the City of Sacramento to convict the defendant of a misdemeanor.   George G. Davis, Judge.

The facts are stated in the opinion of the court.

S. R. Hart, for Petitioner.

Bruner Brothers, *Amici Curiae*, also for Petitioner.

A. A. De Ligne, for Respondent.

TEMPLE, J.—This is a proceeding upon *habeas corpus*. The petitioner states that he was arrested upon a complaint sworn to before one E. C. Rutherford, who claimed to be clerk of the police court of the city of Sacramento, and was thereafter tried and convicted in a pretended police court of said city, which court was presided over by Honorable G. G. Davis, who styled himself police judge, and was sentenced in said pretended court by said alleged judge to six months imprisonment in the county jail of Sacramento county, and is now held by Frank T. Johnson, sheriff, by virtue of said judgment and commitment issued thereon. It is contended that there is legally no such court and no such judge, and, therefore, the detention is unlawful.

Sacramento is governed under a so-called freeholders' charter, which was approved by the legislature by resolution merely. It took effect January 8, 1894. (Stats. 1893, p. 547.)

The charter provided (section 50) that the jurisdiction which had previously been exercised by the police court should be vested in the city justice of the peace, and it was made the duty of such justice to hold a police court. The jurisdiction of the court is provided in the charter. It is made a court of record and provided with a clerk. It is also enacted that certified copies of its records, files, process, and proceedings shall be received in evidence in any court in this state; "and all warrants and process of said court, and all acts done by said court and certified under its seal, shall have the same force and validity in any part of the state as though issued or done by any other court of record in the state."

The police court and the police judge alluded to were constituted by an act amending the charter of Sacramento, passed in 1878. (Stats. 1878, p. 590.) The former court was not a court of record. It was presided over by a police judge and not by a justice of the peace.

It is practically claimed that in the new charter the old police

court is simply recognized and continued, and that no different power or jurisdiction is given to it. In this mode it is supposed that the lack of power to establish courts in freeholders' charters has been overcome—a court has been continued—but no attempt has been made to create a court by the charter. So, too, the presiding judge is a justice of the peace—an officer not created by the charter but by law passed by the legislature.

I do not care to examine the chapter in the new charter defining the jurisdiction of the police court, or to compare its provisions with the former law. I am not able to appreciate the difference, under the circumstances, between continuing an existing court and the creation of a new one. In fact, the argument against the power to continue in existence an existing court, which would otherwise be abrogated by the adoption of the new charter, is stronger, if there is a difference, than any argument that can be made against the power to create a police court by the charter. Until the matter had been decided, it could have been, and was argued with much plausibility that, since municipal courts are usual and even necessary in cities, the express authority to form a charter, in the prescribed mode, necessarily included the power to establish such courts. And that this special mode was made an exception to the general rule. But I am unable to conceive of a plausible argument in favor of the proposition that the people of Sacramento, unaided by a legislative enactment, can continue in force a statute which would otherwise cease to exist. It makes no difference, therefore, whether the police court, recognized and continued in the new, differed from the old court or not.

It is contended, however, that the new charter cannot supersede provisions which could not be contained in the new charter; that since courts could not be created by the freeholders' charter, it could not supersede the old law providing for such courts, although they are found in a former charter; that in the light of constitutional provisions, by which it was incompetent for the new charter to legislate upon the subject, they are not to be deemed charter provisions. Therefore, the old court continues undisturbed with all its jurisdiction and with a police judge.

The language of the constitution is, that the freeholders' charter, when approved, shall become the charter of such city,

"and shall become the organic law thereof and supersede any existing charter, and all amendments thereof, and all laws inconsistent with such charter."

The old charter is not repealed because it is so enacted in the new charter, or because its provisions are inconsistent with those of the new charter. The new charter does not abrogate the old *ex proprio vigore*, but because the constitution declares that such consequence should follow.

The reason of this is sufficiently obvious. It is not the passage of an ordinary law, but the establishment of a government. The new is to take the place of the old, however dissimilar, and, although some parts of the old charter have no corresponding provisions in the new, there is no presumption that anything is continued, for the new scheme is deemed complete in itself and to provide all that is desired. That which is omitted is omitted because not desired. The constitution and maintenance of police courts are usual in such charters, and it cannot be said that provisions for them are not parts of the charter. The scope of a charter is very broad and may be made to include anything of interest to the local government.

This charter prescribes a rule of evidence for all the courts of the state, and extends its process throughout the state. It seems necessary that this should be so. In many respects its charter and its ordinances have force outside of the limits of the municipality. Yet it has been said that, in respect to the charter, "the legislature is not the law-maker; it did not frame or pass the law. It was not charged with any duty, and to it was not delegated any power, either in framing or adopting the law." (*People v. Gunn*, 85 Cal. 238. See, also, *People v. Toal*, 85 Cal. 333.) To this conclusion may be traced most of the complications and difficulties in regard to freeholders' charters, and it constitutes the embarrassment in this case.

These cases were decided under the provisions of the constitution as they then stood. The conclusions were reached after mature deliberation, and for the embarrassments which necessarily resulted ill-advised legislation was solely responsible.

But the later amendments to the constitution seem to have been adopted with a view to relieve from the embarrassment, so that I think that in the present condition of our state organic

law the question should be deemed at least an open one. It is now expressly provided that the charter may be approved by concurrent resolution, and that then such charter "shall become the organic law thereof"—that is, it is a special mode for the enactment of a law by the legislature. It is· clear that it is made a law by the legislature, and becomes a law by this expression of the sovereign will of the state. It prevails and has force as a law of the state, and is not made a law by the people of the municipality by virtue of authority delegated to them. It is proposed by the municipality, and is accepted and passed into a law by the legislature or rejected, as it shall see fit.

The constitution could have ordained any convenient mode for the enactment of statutes. All could have been passed by concurrent resolution and might have become laws without the signature of the governor. This mode is provided for the enactment of this particular law. Nor is this all; an amendment to the constitution was approved by the people in 1896, in which it is declared that it is competent in freeholders' charters to provide for police courts and to fix their jurisdiction; and also, in consolidated cities and counties, to provide for the election or appointment and the terms of office of county officers. (Const., art. XI, sec. 8½.) Still, the other provisions are allowed to stand which ordain that such courts shall be established by the legislature. It must be held that the mode provided for the establishment of such courts in the freeholders' charter is an exception to the general rule. It may as easily be held that the mode provided for the enactment of such a law is also special and an exception to the general rule. County officers in cities and counties perform important functions in the state government. Surely their authority must come from the state government.

This brings me to the only remaining question. It is contended that the provisions in the charter of Sacramento establishing a police court are validated by the amendment No. 13, adding section 8½ to article XI, although the charter was passed before the said amendment.

The amendment is a grant of authority. In its very nature it is to be exercised in the future. Until the grant there is no power to be exercised. Such a law is not on a par with those which are declaratory of rights, nor with those which declare a

certain specified act criminal. Such acts, while with us forbidden, are quite capable of a retrospective operation. To give this amendment such effect something must be added to its terms which would be repugnant to the natural interpretation of the law itself.

In regard to acts concerning procedure, the question as to their retrospective operation in general has reference to pending cases. No case is cited in which it has been held that such law, in the absence of a declared intent, has rendered valid a proceeding entirely closed before the enactment of the law, and, even could such a case be found, it would fall short of the necessities of this case.

This case cannot, therefore, be brought under the provisions of the amendment, and as to cases arising before that amendment we are not inclined to overrule *People v. Toal, supra.* We must, therefore, hold that the judgment and commitment under which petitioner is held is void.

The petitioner is, therefore, discharged from custody.

Henshaw, J., concurred.

HARRISON, J., concurring.—I concur in the judgment, and also in that portion of the foregoing opinion which holds that, since January 8, 1894, when the freeholders' charter went into effect in Sacramento, the police court previously existing in that city has had no existence; and also in that portion of the opinion which holds that section 8½ of article XI of the constitution, which was adopted as an amendment to the constitution in the year 1896, is prospective in its operation, and cannot be invoked for the purpose of validating the provision for a police court in a freeholders' charter previously adopted.

It was held by this court in *People v. Toal,* 85 Cal. 333, after mature consideration, that a police court could not be created by the mere approval by the legislature of a freeholders' charter that had been adopted by a municipality. Whether the principles upon which this case was decided are affected by the adoption of the aforesaid amendment to article XI of the constitution, is a question not involved in this proceeding, and which does not require any expression of opinion.

Garoutte, J., concurred.

McFARLAND, J., dissenting.—I am not able to concur with my associates, although I confess that the case, owing to careless legislation, is one difficult of solution, and that the position taken by the majority of the court is a strong one.   The case of *People v. Toal*, 85 Cal. 333, was decided in 1890, but no attention was apparently given to it in the Sacramento freeholders' charter, which was adopted three years afterward.   Still, as under the constitution as it then stood, a freeholders' charter, approved by a mere concurrent resolution and not by a law, could not create a court, or deal in any way with the judiciary, I think it would not be an unwarrantable construction to hold that the charter of 1893 did not abolish the former police court which had been established and fixed by law under sections 1 and 13 of article VI of the constitution; and I think that such construction, if at all admissible, should prevail in the interest of public justice. It is warrantable, I think, to hold that the provision of the constitution that a freeholders' charter shall "supersede any existing charter" applies only to those matters which may be provided for in a freeholders' charter, and not to courts which cannot be created or provided for in such charter.   The existing police court of Sacramento was a court established by law, and the fact that the law creating it was enacted in the statute which also created a charter for the city makes no difference.   The freeholders' charter did not abolish that court, and could not have done so, because any dealing with the judiciary was entirely outside the scope of such charter.   The question, therefore, is not as to the power of the people of Sacramento to continue an existing court, but as to their power to abolish an existing court duly established by law.

To avoid future embarrassments it is to be hoped that freeholders' charters may be changed, under the recent constitutional amendment, so as to provide for police courts; or that a general statute may be enacted prescribing the jurisdiction of all justices of the peace and police courts.   Under such a general law, a police court could, in my opinion, be established in any city by special law.   The power to establish such a court is expressly given by section 1 of article VI of the constitution, while section 25 of article IV, so far as it relates to this subject, prohibits special or local laws only in the matter of "regulating the juris-

diction and duties" of such courts. Some attempt seems to have been made to pass such a law as is above suggested in the act "fixing the jurisdiction," etc., approved March 9, 1883 (Stats. 1883, p. 63); but its scope is not wide enough to accomplish the suggested purpose.

Van Fleet, J., concurred.