[S. F. No. 12485. In Bank.—June 8, 1927.]

CLAYTON R. TAYLOR et al., Petitioners, v. FRANKLIN B. COLE, Chairman, etc., et al., Members of the Board of Directors of the City of Pasadena, Respondents.

[1] STATUTES—DUE PASSAGE—DETERMINATION OF.—An action of the legislature, i. e., a statute, properly enrolled and authenticated, conclusively establishes not only the contents of the law but the due performance of all steps requisite to its passage by the legislature.

[2] ID.—MUNICIPAL CORPORATIONS—CHARTER AMENDMENTS—RATIFICATION BY LEGISLATURE—JUDICIAL INQUIRY.—The ratification by the

--------

1. Conclusiveness of enrolled bill, notes, 2 L. R. A. 348; 23 L. R. A. 340; 40 L. R. A. (N. S.) 1. See, also, 25 R. C. L. 884; 23 Cal. Jur. 678.

2. See 18 Cal. Jur. 772.

legislature, the deposit of an enrolled copy with the Secretary of State, and the filing of a copy with the county recorder of the proper county, together with deposit of a copy in the archives of the city, clothes charter amendments of the city with all the dignity of an ordinary statutory enactment and entitles them to all the verity and presumptions which attend and protect such statutes.

[3] ID.—CONFIRMATION OF AMENDMENTS BY LEGISLATURE—EVIDENCE—PRESUMPTIONS.—The confirming of amendments to the charter of a city by joint resolution of the legislature, after a consideration thereof, conclusively presupposes that the validity of the election proceedings at which they were approved was examined, proof taken thereon and findings made that said election was in all respects regular.

[4] ID.—CHARTER AMENDMENTS—RATIFICATION—ALLEGED DEFECTS IN PROCEEDINGS — REMEDIES — QUO WARRANTO—PARTIES.—As amendments to the charter of a city, on ratification and filing, become effective as such, *quo warranto* proceedings only would reach defects therein, and members of the board of directors of a city are without the right to invoke this extraordinary remedy which lies only in the name of the people of the state.

[5] ID. — RESOLUTION OF LEGISLATURE RATIFYING CHARTER AMENDMENTS — NATURE OF. — A joint resolution of both houses of the legislature ratifying amendments to the charter of the city and promulgation of said charter amendments has all the essence of a plain legislative enactment.

[6] ID.—RATIFICATION OF CHARTER AMENDMENTS—DUTY OF LEGISLATURE—SECTION 8, ARTICLE XI, CONSTITUTION.—Section 8 of article XI of the constitution places upon the legislature the plain duty of seeing that the proceedings by which amendments to the charter of a city are proposed are regular in all respects; if jurisdictional defects exist, it is the duty of the legislature to reject the documents tendered as a whole and withhold ratification; and where the legislature sees fit to accept the certificate of the chairman of the board of directors of the city and such other evidence as it may have taken, its conclusion that the election at which the amendments were adopted was regular is not open to question in court proceedings, at least in the absence of fraud.

[7] ID.—VALIDITY OF PROCEEDINGS—CONCLUSIVE PRESUMPTION.—Where a proper certification showing adoption of amendments to the charter of a city by regular proceedings was made and forwarded to the legislature, and the legislature adopted said amendments by proper concurrent resolution, which resolution was duly enrolled and

5.  See 16 Cal. Jur. 816.

filed as prescribed by law, any proceedings thereafter taken under said amendments are valid and are not open to question by the board of directors of the city either individually or as a board, and *mandamus* will lie to compel said board to canvass the election returns upon an election held under said charter amendments for members of the board of directors of said city.

(1) 36 Cyc., p. 972, n. 7.   (2) 43 C. J., p. 165, n. 89.   (3) 43 C. J., p. 165, n. 89.   (4) 23 C. J., p. 92, n. 53; 32 Cyc., p. 1440, n. 8.   (5) 43 C. J., p. 165, n. 96 New.   (6) 43 C. J., p. 165, n. 89.   (7) 38 C. J., p. 725, n. 35; 43 C. J., p. 165, n. 90.

APPLICATION for a Writ of Mandate to compel the board of directors of a city to canvass election returns. Writ granted.

The facts are stated in the opinion of the court.

John Perry Wood for Petitioners.

Milton H. Silverberg, M. C. Sloss and Sloss & Ackerman for Respondents.

PRESTON, J.—Petitioners, each a resident and elector of the city of Pasadena, had their names, by regular proceedings to that end had, placed on the ballot as candidates for the office of director under the charter of said city at the general election held therein on April 7, 1927.

They allege that at said election each received the requisite number of votes for election to their respective offices; that defendants are incumbent members of the board of directors of said city who have neglected and refused to comply with the requirements of said charter which direct the canvassing of the returns of said election and declaring the result thereof, and that by their failure so to act petitioners are kept from their respective offices and defendants are unalwfully holding over as incumbents of same. In fairness it should be stated that the acts of defendants as a board are controlled by four incumbents who are directly affected by the election and some of the others at least are not participating in the action being taken by the majority. Petitioners, with a strong showing that public welfare of the city and its people is involved, have asked for a writ of mandate to compel said incumbent directors as said board

to canvass the returns of said election and declare the result thereof.

The sole legal question involved is in reality the degree of strength and the radius of influence which attaches to a concurrent resolution of the two houses of the legislature approving and ratifying charters and amendments to charters of cities which have availed themselves of the benefits of section 8 of article XI of the constitution, which section in such behalf reads as follows: " . . . If a majority of the qualified voters thereon at such general or special election shall vote in favor of such proposed charter, it shall be deemed to be ratified, and shall be submitted to the legislature, if then in session, or at the next regular or special session of the legislature. The legislature shall by concurrent resolution approve or reject such charter as a whole, without power of alteration or amendment; and if approved by a majority of the members elected to each house it shall become the organic law of such city or city and county, and supersede any existing charter and all laws inconsistent therewith. One copy of the charter so ratified and approved shall be filed with the secretary of state, one with the recorder of the county in which such city is located, and one in the archives of the city; and thereafter the courts shall take judicial notice of the provisions of such charter."

Amendments to existing charters are in all substantial respects in the same situation and subject to the same procedure as the original charters themselves.

Defendants assert that the general election of April 7, 1927, in said city was grounded solely upon some five certain alleged radical amendments to the charter of said city approved at an alleged special election held therein on November 2, 1926, and later certified to the legislature, and in January, 1927, regularly ratified by appropriate concurrent resolutions of that body. But it is asserted that said underlying special election of November 2, 1926, was null and void by reason of the express failure of defendants themselves, as the board of directors of said city, to comply with a provision of section 8 of article XI of the constitution requiring advertisement of a notice in a newspaper of general circulation, until the date fixed for the election, that copies of said amendments to said charter might be had

upon application. It is not contended that any of the
various other requirements were omitted. It is also neces-
sary to state that defendants themselves, as the board of
directors of said city, were charged with the duty of caus-
ing said special election of November 2, 1926, to be held
and with the further duty of seeing that all legal require-
ments with respect thereto were carried out and performed.
If any requirement was omitted, the responsibility for such
omission lies with them. There is, of course, no issue of
fraud in any way involved in any of the election proceed-
ings here to be considered.

As such board they duly canvassed the returns of said
special election and declared the said amendments adopted.
Later, as required by law, the chairman of the said board
and the city clerk duly and promptly certified to the state
legislature as follows: "That in accordance with the pro-
visions of section 8 of article XI of the Constitution of
the State of California, on its own motion, the board of
directors of the city of Pasadena, being the legislative body
thereof, duly submitted to the qualified electors of the said
city of Pasadena, certain proposals for the amendment
of the charter of said city to be voted upon by said qualified
electors at the special municipal election held in said city
on the second day of November, 1926, which said proposals
were and each of them was in the words and figures as
follows, to-wit:" The certificate further recites that the
amendments were "published and advertised in accordance
with the provisions of section 8, article XI of the Constitu-
tion," that copies of the proposed amendments were printed
in convenient pamphlet form, and that notice that they
might be had was published "until the date fixed for the
election," "and as required by law"; that the election was
duly held, the result canvassed, and that a majority of the
electors voted in favor of ratification. Thereafter the legis-
lature embodied said certificate, which contained copies of
said amendments, in a concurrent resolution and duly
adopted the said resolution, which had for its preamble the
following:

"Whereas, proceedings have been taken and had for
the proposal, adoption, and ratification of five amendments
hereinafter set forth to the charter of the city of Pasadena,
a municipal corporation in the county of Los Angeles, state

of California, as set out in the certificate of the chairman of the board of directors and city clerk of the said city of Pasadena, as follows, to wit:''

An authenticated copy of said amendments to said charter was duly filed in the office of the Secretary of State, in the office of the county recorder of the county of Los Angeles and in the archives of said city of Pasadena. After ratification and approval of said amendments, the defendants, as the board of directors of said city, proceeded to act thereunder and duly called and caused to be held the general city election of Pasadena, which occurred on April 7, 1927. Indeed, four of the defendants were candidates to succeed themselves at said election. Since said date the said board has continuously failed, refused, and neglected and now fails, refuses, and neglects to canvass the returns of said election or to declare the result thereof. This action, as pointed out above, is based solely upon their own alleged failure to properly advertise, in the proceedings resulting in said special election, a notice in the newspaper for the period prescribed by law designating the place where printed copies of said amendments might be obtained.

No showing is made that these defendants did not know of this omission, if there was such, before certifying the result of said election to the legislature, and no excuse is offered for not raising the question prior to the general election in the city had on April 7, 1927. That publication of such notice was deemed a necessary step is certain because it was duly certified that such publication had in fact been made for the period and in the manner that it is now alleged said act was not done.

Defendants freely admit that the adoption by the legislature of the concurrent resolution ratifying said amendments was efficacious and conclusive to the extent of placing beyond the courts any further inquiry as to the contents of the charter and as to the performance by the legislature of the acts necessary to the adoption of a concurrent resolution thereon. [1] It is also conceded that ''an act of the legislature, i. e., a statute, properly enrolled and authenticated, conclusively establishes not only the contents of the law but the due performance of all steps requisite to its passage by the legislature. This is the general law and has long been the rule of decision in this state. (*Sherman*

v. *Story*, 30 Cal. 253 [89 Am. Dec. 93], and *County of Yolo* v. *Colgan*, 132 Cal. 265 [84 Am. St. Rep. 41, 64 Pac. 403].)''

But defendants deny that in a proceeding for the ratification of a charter by the legislature any statute or law is in fact enacted in the primary sense of that word. They also assert that even if the resolution be in fact an enactment of a statute, it is not sufficient to foreclose legal judicial inquiry into the question as to whether or not mandatory jurisdictional steps were followed in the election which indorsed and proposed said charter amendments.

[2] Petitioners, on the contrary, contend that the ratification by the legislature, the deposit of an enrolled copy with the Secretary of State, and the filing of a copy with the county recorder of the proper county, together with deposit of a copy in the archives of the city, clothed the charter amendments with all the dignity of an ordinary statutory enactment and entitled them to all the verity and presumptions which attend and protect such statutes. Further, that if this premise be conceded, it is without the power of the court by judicial inquiry to impeach the regularity of any of the special proceedings in said election, and the adoption by the legislature of the certificate respecting the regularity of said special election foreclosed any further inquiry as to the validity of the steps taken therein.

[3] Petitioners further contend that confirming the amendments by resolution, after a consideration thereof, conclusively presupposes that the validity of said election proceedings was examined, proof taken thereon and findings made that said election was in all respects regular; that in any event it is not for defendants to complain of failure to observe all the requirements respecting said special election. [4] As said amendments on ratification and filing become effective as such, *quo warranto* proceedings only would reach defects therein and defendants are, therefore, without the right to invoke this extraordinary remedy which lies only in the name of the people of the state.

A careful consideration of the law applicable brings us to the firm conclusion that petitioners are correct in their contentions above noted and that defendants are without any legal justification for the position they have taken.

As noted above, section 8 of article XI of the constitution provides that such ratified charter "shall become the organic law of such city or city and county, and supersede any existing charter and all laws inconsistent therewith"; also that "thereafter the courts shall take judicial notice of the provisions of such charter." What element of the dignity of a statute is wanting? It has the effect of even repealing general laws of the state which may be inconsistent with it. The courts take judicial notice of its provisions and it supersedes any other charter that the city may have had. With these distinct attributes, how can it be denied the verity of an ordinary legislative enactment? Failure in some instances to accord such verity to the charters adopted in this manner has been the seat of some of the confusion found in previous decisions of this court. If any authority, other than the plain words of the constitution, is needed to give such a charter the rating of an act of the legislature, it may be found in the following cases: *Frick* v. *Los Angeles,* 115 Cal. 512, 515 [47 Pac. 250], *Clark* v. *Los Angeles,* 160 Cal. 30, 45 [116 Pac. 722] , *Teachout* v. *Bogy,* 175 Cal. 481, 485 [166 Pac. 319], and *Spaulding* v. *Desmond,* 188 Cal. 784, 790 [207 Pac. 896].

[5] We then conclude without further comment that the ratification and promulgation of said charter amendments had all the essence of a plain legislative enactment. These views, of course, are admittedly in conflict with the pronouncement of this court in the early case of *People* v. *Gunn,* 85 Cal. 238, 248 [24 Pac. 718], where it was said: "In this case the legislature was not the lawmaker; it did not frame or pass the law. It simply passed a resolution approving it. It was not charged with any duty, and to it was not delegated any power, either in framing or adopting the law. Its act was not the enactment of a statute." The doctrine of *People* v. *Gunn, supra,* however, on the point above noted and also upon the question as to the effect of the adoption of a concurrent resolution of the legislature, has been considered in several other cases. In *Ex parte Sparks,* 120 Cal. 395, 398, 399 [52 Pac. 715], it is said:

"This charter prescribes a rule of evidence for all the courts of the state, and extends its process throughout the state. It seems necessary that this should be so. In many

respects its charter and its ordinances have force outside of the limits of the municipality. Yet it has been said that, in respect to the charter, 'the legislature is not the lawmaker; it did not frame or pass the law. It was not charged with any duty, and to it was not delegated any power, either in framing or adopting the law.' (*People* v. *Gunn,* 85 Cal. 238 [24 Pac. 718]. See, also, *People* v. *Toal,* 85 Cal. 333 [24 Pac. 603].) To this conclusion may be traced most of the complications and difficulties in regard to freeholders' charters, and it constitutes the embarrassment in this case.

"These cases were decided under the provisions of the Constitution as they then stood. The conclusions were reached after mature deliberation, and for the embarrassment which necessarily resulted ill-advised legislation was solely responsible.

"But the later amendments to the Constitution seem to have been adopted with a view to relieve from the embarrassment, so that I think that in the present condition of our state organic law the question should be deemed at least an open one. It is now expressly provided that the charter may be approved by concurrent resolution, and that then such charter 'shall become the organic law thereof'— that is, it is a special mode for the enactment of a law by the legislature. It is clear that it is made a law by the legislature, and becomes a law by this expression of the sovereign will of the state. It prevails and has force as a law of the state, and is not made a law by the people of the municipality by virtue of authority delegated to them. It is proposed by the municipality, and is accepted and passed into a law by the legislature or rejected, as it shall see fit."

In *Fragley* v. *Phelan,* 126 Cal. 383, 403 [58 Pac. 923], in a concurring opinion by Mr. Justice Temple, it is said: "But I think we are neither authorized nor required to determine whether the municipal elections were duly and regularly conducted. That was settled by the legislature when it enacted the charter into a law. This position is admitted in *People* v. *Gunn,* 85 Cal. 238 [24 Pac. 718], if the legislature, as to the charter, is the lawmaking power. It is there said, however, that as to the charter the legislautre is not the lawmaking power. This question was again re-

viewed in *Ex parte Sparks,* 120 Cal. 395 [52 Pac. 715];
some of the justices, though not constituting a majority of
the court, held that since an amendment was made to the
Constitution, providing that the charter may be approved
by joint resolution, such charter becomes the law of the
state through the action of the legislature. It was said:
'It prevails and has force as a law of this state, and is not
made a law by the people of the municipality or by virtue
of authority delegated to them. It is proposed by the
municipality, and accepted and passed into law by the legis-
lature, or rejected as it shall see fit.' Many reasons addi-
tional to these stated in *Ex parte Sparks, supra,* might be
given, but it is unnecessary, for all the attorneys in this
case admit that such is the law—that the doctrine laid down
in *Ex parte Sparks, supra,* is the true doctrine.''

*Ex parte Fedderwitz,* 6 Cal. Unrep. 562, 565 [62 Pac.
935], announces the same conclusion, where it is said:
''At the date of that resolution it was necessary that a
city should have a population of at least 3500 before it
could frame a freeholders' charter (Const., art. XI, sec. 8,
as amended in 1892), and it was the undoubted right and
duty of the legislature to ascertain the population of Berke-
ley before acting upon the proposed charter. This the legis-
lature did, and in the preamble to the resolution ratifying
the charter it recited and proclaimed the fact that the town
of Berkeley contained a population of more than 10,000
inhabitants. This resolution with the charter which it estab-
lishes is a law of the state, and is conclusive as to the
fact so recited in the preamble.''

The value of these cases is somewhat impaired by the
fact that in neither of the three cases did four justices
concur in both the opinion and judgment pronounced. It
is also true that in *Spaulding* v. *Desmond,* 188 Cal. 783,
795 [207 Pac. 896], the court weakened the cases to some
extent by failure to declare the case of *People* v. *Gunn,*
*supra,* overruled on the point here discussed. But we are
entirely satisfied with the reasoning in said above-mentioned
cases and hold that as to the point above discussed said case
of *People* v. *Gunn, supra,* need no longer be followed. We do
this with the more security because we feel that it necessarily
follows from the doctrine early announced in this state that
where the existence of a fact is necessary to support the

validity of a legislative enactment, it will be conclusively presumed in support of such enactment that evidence was heard and facts ascertained which authorized the legislature to proceed. In other words, questions of law only, unmixed with questions of fact, will be considered in determining the validity of a legislative enactment.

In the case of *Stevenson* v. *Colgan,* 91 Cal. 649, 652, 653 [25 Am. St. Rep. 230, 14 L. R. A. 459, 27 Pac. 1089], this question was given careful consideration and it was there said: "We therefore hold, that in passing upon the constitutionality of a statute, the court must confine itself to a consideration of those matters which appear upon the face of the law, and those facts of which it can take judicial notice. If the law, when thus considered, does not appear to be unconstitutional, the court will not go behind it, and, by a resort to evidence, undertake to ascertain whether the legislature in its enactment, observed the restrictions which the Constitution imposed upon it as a duty to do, and to the performance of which its members were bound by their oaths of office."

Cooley on Constitutional Limitations, page 187, states the rule as follows: "If evidence was required, it must be supposed that it was before the legislature when the act was passed, and if any special finding was required to warrant the passage of the particular act, it would seem that the passage of the act itself might be equivalent to such finding."

The rule above announced has been continuously applied in this state for many years and this, too, where provisions of the constitution were involved. For example, in *People* v. *Sacramento Drainage District,* 155 Cal. 373, 386 [103 Pac. 207], the court said: "Where the legislature has itself spoken in the creation of a district such as this, and where the legislative determination may be deemed to depend upon a question of fact, it is conclusively presumed that the legislature took evidence in its determination, and the decision which it has reached will not be subject to review by the courts. The latter will confine themselves exclusively to questions appearing upon the face of the statute itself. (*Stevenson* v. *Colgan,* 91 Cal. 649 [25 Am. St. Rep. 230, 14 L. R. A. 459, 27 Pac. 1089]; *Rankin* v. *Colgan,* 115 Cal. 529 [47 Pac. 357]; *Smith* v. *Mathews,* 155 Cal. 752 [103 Pac. 199].) Says Judge Cooley (Constitutional Limitations, p. 220): 'If evidence was

201 Cal.—22

required, it must be supposed that it was before the legislature when the act was passed, and if any special finding was required to warrant the passage of the particular act, it would seem that the passage of the act itself might he held equivalent to such finding.' This court has said, commenting upon this language: 'This view seems to be sustained by the decisions of the highest courts of other states and is in harmony with the central idea of the Constitution in prescribing the independence and equality of the three great departments of the state.' (*Stevenson* v. *Colgan,* 91 Cal. 649 [25 Am. St. Rep. 230, 14 L. R. A. 459, 27 Pac. 1089].)''

[6] In the case before us, the constitution placed upon the legislature the plain duty of seeing that the proceedings by which the charter amendments were proposed were regular in all respects. If jurisdictional defects existed, it was the duty of the legislature to reject the documents tendered as a whole and withhold ratification. The legislature saw fit to accept the certificate of the defendant board and such other evidence as it may have taken and its conclusion that the election was regular is not open to question in court proceedings, at least in the absence of fraud.

[7] We also hold that in any event the existence and validity of the said amendments are not open to question by defendants either individually or as the board of directors of said city. The admitted facts are that a proper certification showing adoption of said amendments by regular proceedings was made and forwarded to the legislature. It is also without question that that legislature adopted said amendments by proper concurrent resolution and, as above stated, said resolution was duly enrolled and filed as prescribed by law. Thereafter any proceedings taken under said amendments were valid. This fact under all the authorities makes the integrity of said city election and the results thereof with absence of fraud free from any attack by individual citizens, property owners, or officials of said city. If this were not true the sovereignty of any city operating under this provision of the constitution could be questioned at any time or place when performing any corporate act. Indeed, the very existence of the city government could be questioned as in this case by those who have accepted the duty of directing its official course.

In *Gray* v. *Cardiff Irr. Dist.*, 51 Cal. App. 304–306 [197 Pac. 389], it was said: "This action was brought by plaintiff to have it determined that proceedings for the enlargement of defendant irrigation district were void, and that an assessment levied by the defendant district upon plaintiff's property, in consequence, was invalid. . . . The grounds alleged, generally stated, were that fraud had been committed by the promoters of the plan by which the boundaries of the original Cardiff Irrigation District had been extended to include the land of the plaintiff and of others. . . . A demurrer was interposed to the complaint, and the point was urged, among others, that plaintiff had not the capacity to sue for the relief demanded, for the reason that an action such as this could only be maintained at the suit of the people of the state. The court sustained the demurrer, and the plaintiff appealed from the judgment of dismissal which followed."

In rendering judgment sustaining the demurrer, the court held: "The district had at least a *de facto* existence, and that was enough to make it immune from an attack by an individual property owner or any number of such owners. . . . It calls into question the existence of the district itself and denies the right of the district to exercise its corporate authority over the annexed territory. Such a cause of action may only be maintained at the instance of the people of the state. (*Quint* v. *Hoffman,* 103 Cal. 506 (37 Pac. 514, 777]; *Reclamation Dist.* v. *Turner,* 104 Cal. 334 [37 Pac. 1038]; *Hamilton* v. *County of San Diego,* 108 Cal. 273 [41 Pac. 305]; *Keech* v. *Joplin,* 157 Cal. 1 [106 Pac. 222].) In another case (*People* v. *Cardiff Irr. Dist.,* 51 Cal. App. 307 [197 Pac. 384]), which was properly brought as a *quo warranto* proceeding, we have considered the main questions affecting the same district, which is attempted to be raised on this appeal. As to this action, however, it is plain that the plaintiff has not the capacity to sue for the relief demanded." (See, also, *Coe* v. *City of Los Angeles,* 42 Cal. App. 479 [183 Pac. 822].)

In *Quint* v. *Hoffman,* 103 Cal. 506, 507 [37 Pac. 514], it was said: "Corporations organized under the act of the legislature, popularly known as the Wright Act, being public corporations, it is immaterial whether they be corporations *de jure* or *de fact.* That is a matter which cannot be inquired into upon a collateral attack; and in a case like the

present, where the validity of an assessment levied by such a corporation is the subject of litigation, the validity of such assessment does in no way rest upon the fact of the *de jure* character of the corporation. This principle must be considered settled law in this state. (*Dean* v. *Davis*, 51 Cal. 411; *Reclamation District* v. *Gray*, 95 Cal. 601 [30 Pac. 779]; *Swamp Land District No. 150* v. *Silver*, 98 Cal. 53 [52 Pac. 866].)''

In *Keech* v. *Joplin*, 157 Cal. 1, 14 [106 Pac. 222], the court said: ''The evidence abundantly shows that the district has been organized and that it has been acting as a district. In other words, that it is a *de facto* district. It is a public corporation of a similar character to irrigation districts and reclamation districts. The law is well settled that the validity of the organization of such a district cannot be questioned by private individuals, but only in a proceeding in *quo warranto* at the suit of the state. (*Quint* v. *Hoffman*, 103 Cal. 506 [37 Pac. 514, 777]; *Reclamation District* v. *Turner*, 104 Cal. 335 [37 Pac. 1038].)''

In *Marin Municipal Water Dist.* v. *Dolge*, 172 Cal. 724, 726 [158 Pac. 187], the court said: ''The auditor, holding office as he does under authority of the district, cannot in his official capacity dispute its existence or the validity of its organization. (*Ayers* v. *Newark*, 59 N. J. L. 174 [6 Atl. 659].) Its validity cannot be questioned except in an action in *quo warranto* by or on behalf of the state. (*Keech* v. *Joplin*, 157 Cal. 1, 14 [106 Pac. 222]; *Quint* v. *Hoffman*, 103 Cal. 506 [37 Pac. 514, 777].) The auditor, like the city clerk in the Los Angeles case, is a purely ministerial officer of the district, and he must obey the orders of the board of directors, regardless of his views on the above-mentioned questions.''

Petitioners have made several other points which they contend are sufficient to sustain the validity of said municipal election against the attacks made thereon by the defendants, but in view of our conclusion as above announced, it is unnecessary to consider any of the further propositions urged upon us.

Let the writ of mandate issue as prayed for.

Richards, J., Seawell, J., Curtis, J., Shenk, J., and Waste, C. J., concurred.

Langdon, J., concurred in judgment.