[Sac. No. 745.   In Bank.— March 19, 1901.]

COUNTY OF YOLO, Appellant, v. EDWARD P. COLGAN, Controller, etc., Respondent.

|132  265|
|133   24|

STATUTES — AUTHENTICATION  CONCLUSIVE  EVIDENCE  OF  PASSAGE — IM-PEACHMENT OF VALIDITY — RESORT TO JOURNALS. — The authentica-tion of a statute duly certified, approved, enrolled, and deposited in the office of the secretary of state, is conclusive evidence that it was properly passed; and its validity cannot be impeached by a resort of the court to the journals of the legislature to show that it did not receive "the concurrence of a majority of the members elected to each house," as required by the present constitution.

ID. — CHANGE OF CONSTITUTION. — The change from the old to the new constitution does not affect the rule that the record of the authen-ticated and enrolled statute in the office of the secretary of state cannot be impeached by evidence of any fact outside of such record.

ID. — DECISION OF LEGISLATIVE DEPARTMENT — DUTY OF JUDICIARY.— The respect due to the co-equal and independent departments of the government requires that the judicial department shall act on the assurance of the legislative department, by its due authentication of a bill, that that act has been passed, leaving to the courts to deter-mine whether the act so authenticated is in conformity to the con-stitution.

ID. — MANDATE OF CONSTITUTION — ENTRY UPON JOURNALS — EVIDENCE OF PASSAGE — FUNCTION OF LEGISLATURE. — The mandate of the constitution, that the yeas and nays shall be entered upon the jour-nals of the legislature, cannot change the rule that it is the exclu-sive function of the legislature to determine by proper authentica-tion that a bill has been passed, in view of the express distinctions made by the constitution between legislative, executive, and judi-cial functions, and in the absence of any provision of the constitu-tion making the journals higher evidence of the due passage of a bill than the approved and enrolled statute, or of any provision empowering the courts to correct the journals of the legislature and to declare not passed a bill certified by it to have been passed, or of any provision making the power of the legislature to pass laws sub-ject to review by the courts.

ID. — VALIDITY OF REPEALING ACT — FINDING AS TO SENATE JOURNAL. — The repealing act of February 23, 1893 (Stats. 1893, p. 5), was a valid enactment of the legislature, and cannot be impeached by a finding that the journal of the senate showed that the vote for the bill in the senate was less than a majority of the senators elected.

ID. — OPERATION OF ACT — STATE RELIEVED FROM FEES AND COMMISSIONS FOR TAXES — MANDAMUS BY COUNTY. — Said repealing act has not been repealed, either expressly or by implication, nor have the

acts repealed thereby been in any manner revived. The intention thereof, when considered in connection with prior statutes, is to relieve the state from the payment of all fees and commissions of county officers for the collection of taxes, except those allowed by the Political Code; and the county is not entitled to a *mandamus* to compel the state to pay to the county any part of such fees and commissions not so excepted.

APPEAL from a judgment of the Superior Court of Sacramento County.    Joseph W. Hughes, Judge.

The facts are stated in the opinion approved by the court in Bank.

E. R. Bush, District Attorney, and Devlin & Devlin, for Appellant.

Tirey L. Ford, Attorney-General, and George A. Sturtevant, Deputy Attorney-General, for Respondent.

THE COURT. — When this case was in Department an opinion was prepared and submitted by the Commissioners, and after oral argument in Bank, and full consideration of the case, we are satisfied with that opinion and the conclusion therein reached.    The opinion is as follows: —

HAYNES, C. — The county of Yolo petitioned the superior court for a writ of mandate to compel the respondent to allow the petitioner to retain out of any moneys belonging to the state of California which might be in the hands of the treasurer of said county at its settlement with the respondent in December, 1899, the sum of $26,771.20, and such other sum as may have accrued to the county upon said December settlement, "for commissions, charges, and fees directed and fixed by law to be allowed to it for services of its auditor and assessor in connection with the state taxes" for the fiscal year 1893–94, and for each successive fiscal year since that date.

An alternative writ was granted, the respondent answered, and upon the hearing the writ was denied and the petition dismissed, and from the judgment of dismissal the petitioner appeals upon the judgment roll.

Said fees and commissions are claimed by the petitioner to have accrued to it under section 107 of the General Revenue Act of 1861 (Stats. 1861, p. 453), and under sections 13 and 15 of the act of March 5, 1870.    (Stats. 1869–70, p. 148.)

The respondent contends that said statutes were superseded and rendered inoperative by the County Government Act of 1883; or if not, that they were directly repealed, so far as said fees and commissions are concerned, by an act approved February 23, 1893 (Stats. 1893, p. 5), except as to commissions paid to the assessors of the several counties for services in the collection of personal property taxes, as provided by chapter VIII of the Political Code, and except, also, as to the mileage allowed the county treasurers in making settlements with the state, under section 3876 of the same code, and as to which there is no controversy.

The petitioner — appellant here — contends that said repealing act never became a law, because it did not receive, in the senate, the number of votes required by the constitutional provision that "no bill shall become a law without the concurrence of a majority of the members elected to each house."

The court found that the journal of the senate showed that the vote on said bill was, ayes, twenty, noes, three; twenty-one being a majority of the senators elected.

The question whether the validity of a statute duly certified, approved, enrolled, and deposited in the office of the secretary of state can be impeached by a resort to the journals of the legislature has been long controverted, and the conclusions reached in the courts of last resort of the different states are inharmonious and conflicting, and this want of harmony is frequently found in the different decisions in the same state, and this remark is not entirely inapplicable to the state of California.

In *Fowler* v. *Pierce*, 2 Cal. 165, it was held that the court may go behind the record evidence of a statute, and inquire whether it was passed or approved in accordance with the constitution.

The case of *Sherman* v. *Story*, 30 Cal. 253,[1] decided in 1866, overruled *Fowler* v. *Pierce, supra*, and it was held that "neither the journals of the legislature, nor the bill as originally introduced, nor the amendments attached to it, nor parol evidence, can be received in order to show that an act of the legislature properly enrolled, authenticated, and deposited with the secretary of state either did not become a law in accordance with the prescribed forms, or did not become a law as enrolled."

---

[1] 89 Am. Dec. 93.

The opinion of the court in that case was delivered by Mr. Justice Sawyer. It is too long to be quoted here, and any attempt at condensation would weaken its force. In it will be found not only cogent arguments in support of the conclusions reached, but many authorities entitled to the highest consideration.

In *Oroville etc. R. R. Co.* v. *Plumas County*, 37 Cal. 355, the invalidity of an act of the legislature was alleged, upon the ground that its passage was procured by fraud. The court, by Rhodes, J., said: "An act of the legislature is not subject to attack on that ground; and it is sufficient on this point to refer to *Sherman* v. *Story*, 30 Cal. 266." [2]

In *Harpending* v. *Haight*, 39 Cal. 189,[3] the question was presented, whether the motive of the mover of a resolution to adjourn the senate was to prevent thereby the executive from returning the bill with his vote. Wallace, J., held the evidence incompetent; citing *Sherman* v. *Story, supra.*

In *People* v. *Burt*, 43 Cal. 560, the court, by Belcher, J., said: "If an act is properly enrolled, authenticated, and deposited with the secretary of state, it is conclusive evidence of the will of the legislature at the time of its passage"; citing *Sherman* v. *Story, supra.*

In *Oakland Paving Co.* v. *Hilton*, 69 Cal. 480, a proposed amendment of the constitution was referred to in the journals of the senate and assembly as senate bill No. 10, but was not copied at large in the respective journals. It was held by Thornton, J., and McKee, J., that the failure to enter the proposed amendment at large in the journals was in violation of section 1 of article XVIII of the constitution, and that the amendment never took effect. The opinion was written by Thornton, J., who said: "There is nothing here in conflict with what is said in *Sherman* v. *Story, supra.*"

In *People* v. *Dunn*, 80 Cal. 211,[4] it was contended by the respondent that "every act not shown by the journals to have taken place must be presumed not to have been done." The court said that this contention cannot be upheld by reason or authority, and that the question as to the power of the court to go behind the enrolled bill in order to determine from the journals whether the bill was properly passed, was not presented.

[2] 89 Am. Dec. 93.          [4] 13 Am. St. Rep. 118.
[3] 2 Am. Rep. 432.

*Hale* v. *McGettigan*, 114 Cal. 112, was similarly disposed of. It was said (pp. 114, 115): "It is, however, unnecessary for us to determine in the present case whether the journals of either branch of the legislature may, under any circumstances, be examined for the purpose of impeaching the validity of an act that has been duly enrolled and deposited with the secretary of state, since we are of the opinion that it does not appear from those journals that the act in question was not constitutionally passed."

It is clear, even upon the authority of those cases which hold that the journals may be looked into to determine whether a bill has been passed in conformity to the requirements of the constitution, that the validity of the statute does not depend upon the failure or omission of the journals to show affirmatively that such requirements were in fact complied with, and hence the correctness of the decisions in *People* v. *Dunn, supra*, and *Hale* v. *McGettigan, supra*, cannot be questioned; yet it is equally clear that if the enrolled statute in the office of the secretary of state is conclusive, and unimpeachable by the legislative journals, each of those cases could have been decided with equal propriety upon that ground. These cases have therefore been regarded as somewhat weakening the force of *Sherman* v. *Story, supra*, and *People* v. *Burt, supra*.

*Weill* v. *Kenfield*, 54 Cal. 111, is cited with much confidence by appellant. The report of that case contains no statement of the points or authorities of counsel, nor is any decision of this court, or any other, cited in the opinion. The question we are now considering is not even suggested in it. There was no controversy in that case as to what transpired in the assembly in relation to the passage of the act, it being conceded that only the title and the first few words of the bill were read, the question considered being whether such reading fulfilled the requirement of the constitution in that regard. Here, what transpired in the senate is the very point in controversy,— appellant contending that the journal contains the only competent evidence, while respondent insists that the enrolled act, duly signed, approved, and filed with the secretary of state, is the conclusive evidence that the bill did receive the vote of a majority of the members elected to each house. If it were here conceded that the bill in question received but twenty votes in the senate, *Weill* v. *Kenfield, supra*, would be in point. Indeed, in such case there could be no controversy.

The learned justice (McKinstry) who wrote the opinion in *Weill* v. *Kenfield, supra,* in a later case (*People* v. *Thompson,* 67 Cal. 628), though placing the decision upon a different ground, made some remarks tending strongly to sustain the proposition that the enrolled statute should be held conclusive. That was a petition for a writ of mandate directing the secretary of state to certify that the petitioners had been duly elected as members of Congress in Congressional districts created by the act of 1872, claiming that the act of 1883, under which the election was proclaimed by the governor, was invalid because of non-compliance by the legislature with certain formalities required by the constitution, the petitioners having received a few votes each in the old districts, while the great mass of the people observed the new law and voted in the new districts. The decision was based upon the ground that the proclamation giving notice of the election according to the law must control, whether it was valid or not. It was there said: "Courts of justice in this state take judicial notice, perhaps, of the contents of the journals of the two houses of the legislature; the citizens at large are not required to take legal notice of the entries of the journals. The people had not been actually notified of such entries when the election was held. They had before them (let us assume) the statute of 1883, approved by the governor, and published as statutes are required to be published, and the governor's proclamation. We are asked to decide that all the voters should have inquired whether the statute was invalid by reason of matters of which they had not been notified; that the duty was imposed upon them to make· investigation into the history in the legislature of the bill for the act of 1883, and to consider questions as to the validity of the law arising out of the proceedings in the legislature which preceded its final passage."

Here is an actual case practically illustrating the confusion and uncertainty which must inevitably result from the doctrine contended for by appellant.

Appellant also cites *Stevenson* v. *Colgan,* 91 Cal. 649,[5] and *Popper* v. *Broderick,* 123 Cal. 456. The first of these cases is distinguished by the court from those cases where it has been held that the court may look into the journals of the legislature for the purpose of determining whether a statute was in fact passed by the requisite vote required by the constitution;

[5] 25 Am. St. Rep. 230.

but the court said: "While the courts have undoubted power
to declare a statute invalid when it appears to them, in the
course of judicial action, to be in conflict with the constitu-
tion, yet they can only do so when the question arises as a
pure question of law, unmixed with matters of fact, the exist-
ence of which must be determined upon a trial, and as the re-
sult of, it may be, conflicting evidence." This proposition
utterly destroys appellant's contention, since whether a bill
was passed by a majority vote is a question of fact which
could only be established by evidence of what took place in
the legislature. In the case of *Popper* v. *Broderick, supra,* no
question here involved was presented or discussed.

From this review of the cases in this court it appears that
the case of *Sherman* v. *Story, supra,* has not been followed in
some cases where it might have been, the decision being
reached upon other grounds; that it has been quoted and fol-
lowed in two cases, distinguished in another, and that in the
only case directly conflicting with it, the opposite doctrine was
assumed without discussion, upon conceded facts, and without
reference to that case or any other.

We are referred by appellant to *County of San Mateo* v.
*Southern Pacific Co.,* 8 Saw. 238, 294, where the same learned
justice who wrote the opinion in *Sherman* v. *Story, supra,*
afterwards, as United States circuit judge, said: "While we
think the case of *Sherman* v. *Story* correctly decided under the
constitution as it then was, we are of the opinion that the
change in the constitution requires a change in the rule, and
such seems to be the view of the supreme court of California
in *Weill* v. *Kenfield,* 54 Cal. 111"; and cites *Spangler* v. *Jacoby,*
14 Ill. 297,[6] and *Prescott* v. *Board of Trustees,* 19 Ill. 326, say-
ing that California adopted the said provision in its present
constitution substantially as found in the constitution of Illi-
nois. But this change in the constitution does not affect the
rule that the record consisting of the enrolled statute in the
office of the secretary of state cannot be impeached by evi-
dence of any fact outside of such record, as was clearly shown
in the opinion of the same justice in *Sherman* v. *Story, supra.*
If it could be, then, before it can be determined what the law
is in any given case, resort must be had to the journals of the
legislature, which are often imperfect and erroneous, and dif-
ferent courts might readily differ in their conclusions as to

[6] 58 Am. Dec. 571, and note.

whether the evidence obtained from the journals did or did not show that the requirements of the constitution had been complied with. We are not bound, however, by this decision of a Federal court, not only because our conclusion upon the question cannot be reviewed by that court, but because the supreme court of the United States has reached a different conclusion.

In *Field* v. *Clark*, 143 U. S. 649, it was said (p. 668): "The contention of the appellants is, that this enrolled act in the custody of the secretary of state, and appearing, upon its face, to have become a law in the mode prescribed by the constitution, is to be deemed an absolute nullity in all its parts because — such is the allegation — it is shown by the Congressional record of proceedings, reports of committees of each house, reports of committees of conference, and other papers printed by authority of Congress, and having reference to House bill 9416, that a section of the bill as it finally passed was not in the bill authenticated by the signatures of the presiding officers of the respective houses of Congress, and approved by the President." After quoting the alleged omitted section, the opinion proceeds: "The argument in behalf of appellants is, that a bill signed by the speaker of the House of Representatives and by the president of the Senate, presented to and approved by the President of the United States, and delivered by the latter to the Secretary of State as an act passed by Congress, does not become a law of the United States, if it had not in fact been passed by Congress. In view of the express requirements of the constitution, the correctness of this general principle cannot be doubted. There is no authority in the presiding officers of the House of Representatives and the Senate to attest by their signatures, nor in the President to approve, nor in the Secretary of State to receive and cause to be published, as a legislative act, any bill not passed by Congress. But this concession of the correctness of the general principle for which the appellants contend does not determine the precise question before the court; for it remains to inquire as to the nature of the evidence upon which a court may act when the issue is made as to whether a bill, originating in the House of Representatives or the Senate, and asserted to have become a law, was or was not passed by Congress. It has received, as its importance required that it should receive, the most deliberate consideration. We recognize, on the one hand, the duty of this court, from the performance of

which it may not shrink, to give full effect to the provisions of the constitution relating to the enactment of laws that are to operate wherever the authority and jurisdiction of the United States extend.   On the other hand, we cannot be unmindful of the consequences that must result if this court should feel obliged, in fidelity to the constitution, to declare that an enrolled bill, on which depend public and private interests of vast magnitude, and which has been authenticated by the signatures of the presiding officers of the two houses of Congress, and by the approval of the President, and been deposited in the public archives *as an act of Congress,* was not in fact passed by the House of Representatives and the Senate, and therefore did not become a law." After quoting from article I, section 5, of the constitution, the court proceeded: "It was assumed in argument that the object of this clause was to make the journal the best, if not conclusive, evidence upon the issue as to whether a bill was in fact passed by the two houses of Congress.   But the words used do not require such interpretation.   On the contrary, as Mr. Justice Story has well said, 'the object of the whole clause is to insure publicity to the proceedings of the legislature, and a correspondent responsibility of the members to their respective constituents.   And it is founded in sound policy and deep political foresight.   Intrigue and cabal are thus deprived of some of their main resources, by plotting and devising measures in secrecy.   The public mind is enlightened by an attentive examination of the public measures; patriotism, and integrity, and wisdom obtain their due reward, and votes are ascertained, not by vague conjecture, but by positive facts.' . . . The signing, by the speaker of the House of Representatives, and by the president of the Senate, in open session, of an enrolled bill is an official attestation, by the two houses, of such bill as one that has passed Congress. It is a declaration by the two houses, through their presiding officers, to the President that a bill, thus attested, has received in due form the sanction of the legislative branch of the government, and that it is delivered to him in obedience to the constitutional requirement that all bills which pass Congress shall be presented to him.   And when a bill thus attested receives his approval, and is deposited in the public archives, its authentication as a bill that has passed Congress should be deemed complete and unimpeachable.   As the

CXXXII. Cal.—18

President has no authority to approve a bill not passed by Congress, an enrolled act in the custody of the Secretary of State carries on its face a solemn assurance by the legislative and executive departments of the government, charged, respectively, with the duty of enacting and executing the laws, that it was passed by Congress. The respect due to the coequal and independent departments requires the judicial department to act upon that assurance, and to accept, as having passed Congress, all bills authenticated in the manner. stated, leaving the courts to determine, when the question properly arises, whether the act so authenticated is in conformity with the constitution."

The court in that case cited *Sherman* v. *Story, supra,* and quoted extensively from it; and also cited and approved *Pangborn* v. *Young,* 32 N. J. L. 29, and *State* v. *Swift,* 10 Nev. 176.[7] The opinion in the latter case was delivered by Mr. Justice Beatty (now chief justice of this court). In it the question here under consideration was very fully discussed and numerous authorities cited and reviewed.

It is true, the supreme court of the United States, in the case above cited, referred to the case in 8 Sawyer, *supra,* quoting the remark of Judge Sawyer, that the constitution had been changed since *Sherman* v. *Story* was decided; but that court did not specify or comment upon the change. It is also true that the court said, "In regard to certain matters, the constitution expressly requires that they shall be entered on the journal. To what extent the validity of legislative action is affected by the failure to have those matters entered on the journal, we need not inquire." The reasoning of the court, however, in *Field* v. *Clark,* is equally as conclusive in the case at bar as under the facts there stated. The mandate of our constitution, that the yeas and nays shall be entered on the journal, in the absence of a further provision making the journal higher evidence of the due passage of a bill than the approved and enrolled statute, does not affect the question. Such provision would, in effect, empower the courts to correct the journals of the legislature, and declare that a bill, certified by it to have been passed, was not passed,—a power that is nowhere in the constitution either expressly or impliedly given to the judicial department.

The law-making power of the state is vested, by the consti-

7 21 Am. Rep. 721.

tution, in the legislature; and while the constitution has pre-
scribed the formalities to be observed in the passage of bills
and the creation of statutes, the power to determine whether
these formalities have been complied with is necessarily vested
in the legislature itself, since, if it were not, it would be power-
less to enact a statute.    The constitution has not provided
that this essential power thus vested in the legislature shall be
subject to review by the courts, while it has expressly provided
that no person charged with the exercise of powers properly
belonging to one of the three departments—the legislative,
executive, and judicial—into which the powers of the govern-
ment are divided, shall exercise any functions appertaining to
either of the others.

In *Pangborn* v. *Young, supra,* the constitution provided, as to
the form of enacting bills, "that the yeas and nays of the
members voting on such final passage shall be entered on the
journal," and is therefore directly in point here.    For a cita-
tion of numerous authorities for and against the rule laid down
in *Sherman* v. *Story,* see 2 Notes on California Reports, 573.

It is further contended by appellant that said act of 1893
"does not purport to abolish the fees and percentages allowed
to the county by section 15 of the act of March 5, 1870 (Stats.
1869–70, p. 164), or the commissions allowed to the treasurer
for the disbursement of public money by section 107 of the act
of 1861.    (Stats. 1861, p. 453.)"

Under the acts of March 5, 1870, and March 1, 1874, the
county officers were authorized to collect and hold from the
state the commissions for the collection of the revenue; but a
later act (Stats. 1873–74, p. 420) provided that all fees or com-
missions allowed to or received by these county officers for
these services in collecting the revenues of the state should be
paid into the county treasury and apportioned to the salary
fund; so that while the counties, and not the officers, received
the benefit of these fees and commissions (except those pro-
vided for in the Political Code, and which are not affected by
the repealing act), the moneys thus accruing to the counties
were the "fees and commissions allowed to or received by the
auditor, assessor, collector, or treasurer."    The intention of the
repealing act, when considered in connection with the prior
statutes, is, therefore, to relieve the state from the payment of
all fees and commissions, except those allowed by the Political
Code.

It is further contended by appellant, that "assuming that the 'abolishing act of 1893' became a law, it was repealed by the County Government Act of 1893."

The act in question was approved February 23, 1893, and took effect the first Monday in May of that year. The County Government Act of 1893 was approved March 24, 1893. It is not claimed that the first-mentioned act was expressly repealed by the second, nor that the second expressly provided for the payment, by the state, of the fees and commissions here in controversy, but the contention is, that the first act was repealed by implication. We see no ground upon which a repeal by implication can be sustained; but a repeal of the "abolishing act," if it were repealed by the County Government Act, whether expressly or by implication, would not revive the acts repealed by the "abolishing act"; and if the County Government Act re-established these fees and commissions, it must have done so by express enactment. The case of *San Luis Obispo County* v. *Felts*, 104 Cal. 60, cited by appellant, referred only to fees or percentages allowed by the Political Code, and which were expressly excepted from the operation of the abolishing act; nor does the case of *Goodwin* v. *Buckley*, 54 Cal. 295, have any application, since the County Government Act did not provide for the fees and commissions which appellant here seeks to recover.

In appellant's brief we find a statement of the amounts directed by the legislature to be raised for state purposes for five fiscal years there named, ending with that of 1897–98, and of the amounts actually collected and paid into the state treasury for the same years, from which it appears that the amount collected exceeds the amount directed to be raised by $1,244,-847.54, and the question is asked, "Does not this surplus money belong to the counties?" Whether it does or not is immaterial in this proceeding, as it was not included in petitioner's demand.

Appellant also refers to "An act authorizing the allowance, settlement, and payment of claims of counties against the state," approved March 9, 1893. (Stats. 1893, p. 109.) This statute did not create or fix any fees or charges against the state, but provided for the allowance of fees and commissions which, having been paid into the state treasury, might be allowed in the next settlement. There is no inconsistency between this act and the abolishing act previously passed, since

claims which had accrued to the counties prior to the repeal were not affected by it, and besides, "the abolishing act" expressly excepted from its operation certain fees or commissions therein named, to which the later act might properly apply.

Respondent refers to an act approved February 16, 1899 (Stats. 1899, p. 9), to prevent the maintenance of any action for the recovery of the fees and commissions such as are here in question, which provides that "all such actions and proceedings heretofore commenced and now pending, and all such actions or proceedings that may hereafter be instituted, shall be dismissed by the court in which the same may be pending, upon its own motion"; but this act excepts the fees and commissions which were excepted by the said "abolishing act." In view of the conclusion reached as to the validity of said "abolishing act," this act need not be considered.

We think the court below did not err in denying the writ, and advise that the judgment appealed from be affirmed.

Chipman, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the judgment appealed from is affirmed.

Garoutte, J., Henshaw, J., McFarland, J., Van Dyke, J.

Temple, J., and Harrison, J., dissented.

Rehearing denied.