[S. F. No. 10,057. In Bank.—May 26, 1922.]

## L. H. SPAULDING, Petitioner, v. M. J. DESMOND et al., Respondents.

[1] MANDAMUS—FILING OF OFFICIAL OATH—PROPER PROCEEDING.—*Mandamus* is the proper proceeding to compel a city clerk to file the official oath of office of the city collector.

[2] MUNICIPAL CORPORATIONS—CHARTER—APPROVAL AND RATIFICATION —EFFECT OF.—Under section 8 of article XI of the constitution, a city charter approved by a majority of the qualified voters of the city and adopted by a concurrent resolution of the legislature becomes the organic law of the city, and supersedes any existing charter and all laws inconsistent therewith.

[3] STATUTES—CONCLUSIVE EVIDENCE OF PASSAGE.—Where an act has been passed by the legislature, signed by the proper officers of the Senate and Assembly, approved by the Governor and properly enrolled and authenticated, and filed in the office of the Secretary of State, it constitutes a record which is conclusive evidence of its passage and of its terms and provisions, and neither the journals of either house, nor the bill as originally introduced, nor any of the amendments thereof, nor parol evidence, can be received in order to show that it did not become a law in accordance with the prescribed forms or as so enrolled.

[4] ID.—CITY CHARTERS—APPLICABILITY OF RULE.—The rule that statutes enacted by the legislature and enrolled, authenticated, and filed with the Secretary of State constitute records which are conclusive evidence of their passage is applicable to city charters approved by the legislature, certified and filed with the Secretary of State.

[5] MUNICIPAL CORPORATIONS—CHARTER—JUDICIAL NOTICE.—Under section 8 of article XI of the constitution, judicial notice cannot be taken of a copy of a city charter authenticated by the mayor and city clerk, but not authenticated by the officers of either house of the legislature.

[6] ID.—CITY OF SACRAMENTO—EXISTING CHARTER.—The charter of the city of Sacramento, a copy of which was filed in the office of the Secretary of State on January 20, 1921, constitutes the valid and existing organic law of such city, superseding the charter of 1911 and all laws inconsistent with the charter of 1920, including that providing for the office of city collector.

[7] CHARTERS—COMPETENT EVIDENCE OF CONTENTS.—Under section 8 of article XI of the constitution, the only competent evidence of the contents of a city charter is either the copy attached to or included in the concurrent resolution of the legislature ratifying the charter, if any copy was so attached or included, and the copies filed as specified in such section, and in case of a conflict between the copies so filed, and the copy, if any, attached to the resolution, the latter would prevail. (On application for modification of opinion.)

APPLICATION for a Writ of Mandate to compel the filing of the oath of office of city collector. Denied.

The facts are stated in the opinion of the court.

---

3. Impeachment of act of legislature by reference to legislative journals, notes, 9 Ann. Cas. 582; 20 Ann. Cas. 350; Ann. Cas. 1918D, 253.

R. Platnauer for Petitioner.

R. L. Shinn and Devlin & Devlin for Respondents.

SHURTLEFF, J.—This is an original application for the issuance of a writ of *mandamus* directed to Harry G. Denton, who has been regularly substituted as a defendant in the place and stead of M. J. Desmond, deceased, directing the said Denton, as clerk of the city of Sacramento, to file the oath of plaintiff as the alleged "city collector" of said city. Plaintiff bases his right to have such oath filed upon the provisions of the charter of said city known and hereinafter referred to as the "Charter of 1911" (Stats. 1911, Extra Sess., p. 305), which provided for a "city commission" in which was vested the power of appointing a city collector, and which charter plaintiff contends is still in force. It would, we think, conduce to a better understanding of the questions arising upon this application to state at this point that on November 30, 1920, the electors of said city of Sacramento ratified a new charter, hereinafter designated as the "Charter of 1920," which provided for a municipal governing body termed the "city council," and which charter, if legally adopted, became operative on June 30, 1921, with the one exception that for the sole purpose of the election of said city council, the members of which were the only officers under said charter to be elected by the people, it should go into effect immediately after its approval by the legislature, which approval, it is claimed by defendants, was accorded on January 20, 1921. (Stats. 1921, p. 1919.)

The petition, in substance, alleges that at all the times in it mentioned the city of Sacramento was a municipal corporation of the state of California, organized and existing under the laws of said state, governed in accordance with the provisions of a charter adopted and approved by the legislature in 1911 in the manner provided by the constitution; that the defendant, M. J. Desmond, from July, 1913, up to the time of his death on December 27, 1921, was the duly appointed, qualified, and acting city clerk of said city. That on the fifteenth day of November, 1921, which, it will be noted, was after the charter of 1920, if valid, became fully operative, the *"said commission"* of said city of Sacra-

188 Cal.—50

mento, which derived its authority as previously stated, if any it had for such act, from the charter of 1911, appointed the plaintiff city collector of said city, and that in compliance with the provisions of an ordinance of said city, adopted in January, 1919, he executed his bond as such collector with sufficient sureties to said city in the penal sum required, which bond was approved and filed with the auditor of said city. That on the 18th of November, 1921, and after such approval of said bond, plaintiff as such city collector regularly subscribed and took his official oath in writing, and presented it to M. J. Desmond, the then clerk of the city of Sacramento, as such clerk, and demanded that it be filed, which demand was refused. That the reason assigned by said Desmond for such refusal was, that the charter of 1911 was superseded and abrogated by the charter of 1920, and that there was no longer a city collector or any law creating such an office. That on the thirtieth day of November, 1920, the qualified electors of said city ratified a proposed charter for the government of said city, framed as provided by section 8 of article XI of the constitution of California. That the last-mentioned charter was never submitted to the legislature of the state of California for its approval or rejection, and was never approved by the legislature. That the legislature, at its session in 1921, by concurrent resolution passed by a majority of the members elected to each house thereof, approved what purported to be a copy of the charter of 1920 as ratified, but which in truth and in fact was not a complete copy thereof.

The city makes two appearances, one by answer of the "city commission," admitting all the allegations of the petition, and the other through or by the "city council," which demurred and answered at the same time. We have, therefore, separate appearances of the alleged governing bodies created respectively by the charter of 1911 and the charter of 1920. It is not necessary to give any consideration to the answer of the "city commission," for it raises no issues in that it concedes the correctness of plaintiff's contentions. We will, therefore, confine the discussion to the petition and pleadings of the city council, and it will be understood, unless otherwise stated, that the use of the term "defend-

ants'' refers to the city thus appearing and the defendant Denton.

The demurrer alleges, first, that the petition does not state facts sufficient to constitute a cause of action, or a cause ''for the issuance of a writ of *mandamus*''; and, second, that it appears upon the face of the petition that the only possible cause of action stated therein is one in favor of the people of the state of California, which must be made the subject of a proceeding by the state in *quo warranto*. The answer of the defendants ·in substance avers that the charter of 1911 was superseded by the charter of 1920, and that ever since the twentieth day of January, 1921, the last-named charter has been and is the organic law of said city; that on November 18, 1921, a copy of the charter of 1920, so ratified and approved, was filed respectively with the Secretary of State of the state of California, the county recorder of the county of Sacramento, and in the archives of said city of Sacramento. That said M. J. Desmond was the city clerk of the city of Sacramento under said charter of 1911 from July, 1913, the exact date not appearing in any of the pleadings, until the thirtieth day of June, 1921, upon which latter date the charter of 1911 ceased to have any operative effect; that upon said last-mentioned date the said M. J. Desmond voluntarily surrendered his office as city clerk under the charter of 1911, and ever since the thirtieth day of June, 1921, neither he nor either of his successors has been city clerk of the city of Sacramento under said charter of 1911; that on said thirtieth day of June, 1921, said M. J. Desmond was elected city clerk of said city by the city council of said city pursuant to and charged with the duties provided in the charter of 1920, and that thereupon he duly qualified as such city clerk under said charter of 1920, and that ever since said thirtieth day of June, 1921, he, or a successor to him, of whom the defendant Denton was one, has been the duly appointed, qualified, and acting city clerk of the city of Sacramento, with the duties provided for in the said charter of 1920. That the ordinance pursuant to which plaintiff alleges that he filed his bond and took his office is not, and has not been, in effect at any time since June 30, 1921, and that since said date there has not been any such office as city collector of said city. The answer further denies that the charter of 1920 was never

submitted to the legislature for its approval or rejection, but avers that it was so submitted, and, by concurrent resolution passed by each house of the legislature, was on January 20, 1921, approved, and that the charter so approved by the legislature was the same charter ratified by the qualified electors of said city of Sacramento on November 30, 1920. The answer admits the averments of the petition touching the oath by plaintiff as city collector, his attempt to file the same with the city clerk, the latter's refusal to make such filing and the reasons assigned for such refusal. It is alleged as a separate defense that there is another action, in the nature of *quo warranto*, pending between the same parties and involving the same subject matter, but, in view of the conclusions which follow, it is not necessary for us to consider this special defense, and we express no opinion concerning it. To the defendant's answer plaintiff demurs upon the ground of its insufficiency. Inasmuch as the questions, the decision of which is, in our opinion, determinative of this controversy, are raised by the petition and answer as well as by the demurrers, we will not separately consider the latter pleadings, but dispose of the matter upon its merits.

The record shows that an enrolled copy of the concurrent resolution approving the charter of 1920, authenticated by the proper officers of the Senate and Assembly, was filed in the office of the Secretary of State on January 24, 1921.

[1] What we regard as the controlling questions raised by the pleadings are: First, do the facts alleged in the petition support a proceeding in *mandamus?* And, second, is the charter of 1920 the organic law of the city of Sacramento, and, if so, can we in this proceeding question the verity or validity of the enrolled copy thereof filed with the Secretary of State? The first of these propositions must be answered in the affirmative. The plaintiff is not, as contended by defendants, attempting in this application to try the title to his alleged office or to have himself judicially declared to be the city collector of the city of Sacramento, but, as already stated, is asking for an order directing the defendant, as city clerk, to file his official oath as such city collector, which he claims is essential in order for him to be fully clothed with official authority. That this is the proper proceeding to accomplish such result if he is legally

entitled to have such oath filed and it is the duty of the city clerk, under the law, to file it, does not admit of doubt, for it is well settled in this state that *mandamus* is proper to compel the performance of a duty especially enjoined by law. (*Kelly* v. *Edwards,* 69 Cal. 460–462 [11 Pac. 1]; *Peck* v. *Board of Supervisors of Los Angeles Co.,* 90 Cal. 384 [27 Pac. 301]; *Bannerman* v. *Boyle,* 160 Cal. 203 [116 Pac. 732]; *Fox* v. *Workman,* 6 Cal. App. 633 [92 Pac. 742]; Code Civ. Proc., sec. 1085.)

We pass to the discussion of the second and more important question. The provision of the constitution with which we are directly concerned is the following: "If a majority of the qualified voters voting thereon at such general or special election shall vote in favor of such proposed charter, it shall be deemed to be ratified, and shall be submitted to the legislature, if then in session, or at the next regular or special session of the legislature. The legislature shall by concurrent resolution approve or reject such charter as a whole, without power of alteration or amendment; and if approved by a majority of the members elected to each house it shall become the organic law of such city and county, and supersede any existing charter and all laws inconsistent therewith. One copy of the charter so ratified and approved shall be filed with the secretary of state, one with the recorder of the county in which such city is located, and one in the archives of the city; *and thereafter the courts shall take judicial notice of the provisions of such charter.*" (Art. XI, sec. 8.) (Italics ours.)

[2] In speaking of this provision and the legal status of a charter approved thereunder, this court in *Brooks* v. *Fischer,* 79 Cal. 173–176 [4 L. R. A. 429, 21 Pac. 652, 653], said: "It provides: 1. For submission [of the ratified charter] to the legislature for its approval or rejection; 2. That if approved by a majority vote of the members elected to each house, *it shall become the charter of said city.* This does not in terms require any action on the part of the governor, but expressly provides that immediately upon its being approved by a majority of the members of the two houses of the legislature, it shall become the charter of the city. . . . It seems to us that this language is so plain and unequivocal that it cannot call for a construction by this court.

It is enough that the constitution has so provided.'' Again, in a more recent case, addressing itself to the same subject, this court used the following language: ''It is now expressly provided that the charter may be approved by concurrent resolution, and that then such charter 'shall become the organic law thereof'—that is, it is a special mode for the enactment of a law by the legislature. It is clear that it is made a law by the legislature, and becomes a law by this expression of the sovereign will of the state. It prevails and has force as a law of the state, and is not made a law by the people of the municipality by virtue of authority delegated to them. It is proposed by the municipality, and is accepted and passed into a law by the legislature or rejected, as it shall see fit.'' (*Ex parte Sparks,* 120 Cal. 395–399 [52 Pac. 715, 716].) It is, therefore, settled that it is the charter adopted by the legislature which becomes the organic law of the city by which it was ratified and submitted for approval. The correctness of this proposition is not contested by any of the parties to this proceeding, but plaintiff affirms that he can impeach the validity of the charter filed with the Secretary of State, or either of the other depositaries designated in the constitution, by showing, through the means of comparison or otherwise, that it is not a correct copy of the charter ratified by the electors; and the defendants assert that they have the right to prove by the journal of the respective branches of the legislature that in fact the charter adopted was the one ratified, and that they are not precluded by the filed copy. But in our opinion neither of these contentions can be sustained. [3] It has long been the law of this state that, where an act has been passed by the legislature, signed by the proper officers of the Senate and Assembly, approved by the Governor and properly enrolled and authenticated, and filed in the office of the Secretary of State, it constitutes a record which is conclusive evidence of its passage and of its terms and provisions, and that neither the journals of either house, nor the bill as originally introduced, nor any of the amendments thereof, nor parol evidence, can be received in order to show that it did not become a law in accordance with the prescribed forms or as so enrolled. (*Sherman* v. *Story,* 30 Cal. 253 [89 Am. Dec. 93]; *County of Yolo* v. *Colgan,* 132 Cal. 265 [84 Am. St. Rep. 41, 64 Pac. 403].) [4]

While, so far as the briefs and our research disclose, it has never been held that this rule applies to an enrolled and authenticated copy of a concurrent resolution filed with the Secretary of State, we can see no reason, resting upon principle, why it is not applicable here. That it is controlling finds support in that portion of the constitution quoted, which affirms that when the charter is filed as directed, the courts *shall* take judicial notice of its provisions. We think this mandate, reinforced by the foregoing rule, precludes us in this hearing from going behind the enrolled and filed charter. "Judicial knowledge [notice] is not reached by the use of evidence; it is a matter pertaining to the judicial function and its existence, like that of an admission, stipulation, or rule of presumption, dispenses with evidence as to the point covered." (16 Cyc., p. 850.) The constitution goes even further than the quoted text and in effect declares that when the controversy involves a provision of the charter, the courts *shall* determine it from what appears in the copy filed with the Secretary of State or with the other depositaries mentioned in the constitution. It would practically nullify this provision of the constitution to construe it as meaning that the courts must take judicial notice of the contents of the filed copy except where the issue is that such copy is invalid because not an exact reproduction of the charter as ratified by the electors and approved by the legislature. Taking judicial notice of the contents of the charter is taking notice of such contents as a whole—as a completed document—as well as of some specific part thereof. The wisdom and purpose of this requirement of the constitution are manifest. It is essential, commercially and otherwise, that there exist some established memorial, some authoritative and permanent record of the charter, which is conclusive and unimpeachable, at least against an attack such as the one made here, and to which those desiring to be advised of its terms may with security and confidence resort. Were it otherwise, a municipal government would be constantly exposed to the possibility of having its organic law assailed upon the ground that the enrolled and filed copy of the concurrent resolution approving it is defective by reason of the asserted omission therefrom of some portion of the ratified and approved charter.

*Sherman* v. *Story, supra,* although decided under the constitution of 1849, contains language in point here. We quote the following from the opinion (p. 278) [89 Am. Dec. 93]: "There is nothing in the Constitution . . . that requires or authorizes us to *avoid, correct or in any way modify,* by aid of the Journals, the Acts of the Legislature properly enrolled, authenticated and deposited with the Secretary of State as records of the Act . . . Much less is there any authority for resorting to the bill as originally introduced, . . . or to parol evidence for the purpose of impeaching the record. . . . The question, then, whether an important public law, upon which the rights of all our citizens depend or may depend was ever passed, is to rest, through all time, upon equivocal memoranda upon amendment tags and the frail recollection and veracity of man." (Italics ours.) And this question the court there answers emphatically in the negative.

*County of Yolo* v. *Colgan, supra,* decides that the change from the old to the new constitution did not abrogate or affect the rule that the record of the authenticated and enrolled statute in the office of the Secretary of State cannot be impeached by evidence of any fact outside of such record.

The late Chief Justice Beatty, speaking for the supreme court of Nevada, of which court he was then a member, used these words: "How is a court to be satisfied as to the existence and terms of a statute? Is it bound by the statute-roll, or can it look beyond the record? And if so, how far can the investigation be extended? . . . Whoever engages in any transaction the validity or construction of which depends upon statutory provisions, whoever holds or acquires any sort of property, or right, the title or enjoyment of which may be affected by the operation of any law, is bound to take notice, at his peril, what the law is. And it is not enough for him to know what the law is after a court of last resort has made an investigation and determined what part of the statute-roll is to stand and what part to fall, but he must know in advance of litigation, and govern his conduct accordingly. If there is any record or document outside of the statute-roll to which a court will resort for the purpose of testing the validity of an enrolled law, he must not overlook it. If a court will hear oral testimony to impeach the record, he must be able to conjecture in advance

what the testimony will be, and what weight will be allowed to it. Considering the exigency of this rule it is easy to perceive of what extreme importance it is that there should be some high, authentic and unquestionable record to which not only courts and public officers, but private citizens, may resort, and by a simple inspection determine for themselves with infallible certainty what are the statutes of the State, and what are their terms.'' (*Nevada* v. *Swift,* 10 Nev. 176–182.)

[5] As before noted, defendants in their answer aver, that on November 18, 1921, a copy of the charter of 1920, as ratified and approved, was filed in the office of the Secretary of State, and, while the demurrer to the answer would ordinarily admit the truth of this averment, we treat it as denied in obedience to the rule that the averments of the answer are deemed denied. The answer sets forth a copy of the charter, which it avers was filed on November 18, 1921, as aforesaid, but it is not authenticated by the officers of either house of the legislature, but by the mayor and city clerk of the city of Sacramento. We know of no law authorizing the filing of this document, so attested, and we regard it as of no potency whatever. Clearly, it is not a record of which this court can take judicial notice, or a certified copy of which would be admissible here. As we have said, it is the copy attested by the proper officers of the respective legislative bodies approving the charter, filed with the Secretary of State, and no other, of which the courts take judicial notice, which, in this instance, is the one so filed on January 24, 1921.

[6] Our conclusion is that in this inquiry we are precluded from going behind the said copy of the charter of 1920, which was filed in the office of the Secretary of State on January 24, 1921, and that, as so filed, it is the existing and valid charter of the city of Sacramento, superseding the charter of 1911 and all laws inconsistent with the provisions of said charter of 1920. It follows, therefore, and we so hold, that there is no such office as ''city collector'' of the city of Sacramento, and that plaintiff has failed to establish his right to have his oath as such alleged city collector filed in the records of said city as demanded by him or otherwise.

In view of what precedes, it is unnecessary to consider the additional points urged in the briefs.

The application for a writ of mandate is denied.

Shaw, C. J., Lennon, J., Wilbur, J., Sloane, J., Lawlor, J., and Richards, J., *pro tem.*, concurred.

The foregoing opinion was modified by the supreme court on June 22, 1922, as follows:

SHAW, C. J.—The respondent has filed a petition asking the court to modify in certain particulars the opinion hereinbefore rendered.

Upon further consideration of the matter we are satisfied that the modification should be made. The constitution (art. XI, sec. 8) declares that when a city charter ratified by the people of the city has been submitted to the legislature and has been approved by concurrent resolution "one copy of the charter so ratified and approved shall be filed with the Secretary of State, one with the recorder of the county in which such city is located, and one in the archives of the city; and thereafter the courts shall take judicial notice of the provisions of such charter." The natural meaning of this language is that the courts must take judicial notice of the charter, the copy of which is so filed. We have held, and we adhere to that opinion, that the doctrine of the decision in *Sherman* v. *Story,* 30 Cal. 253 [89 Am. Dec. 93], and *Yolo Co.* v. *Colgan,* 132 Cal. 266 [84 Am. St. Rep. 41, 64 Pac. 403], is applicable to city charters approved by the legislature, certified and filed with the Secretary of State, as fully as it is to statutes enacted by the legislature, and enrolled, authenticated, and filed with the Secretary of State. [7] Under that doctrine the only competent evidence of the contents of such charter is either the copy attached to or included in the concurrent resolution, if any copy was so attached or included, and the copies so filed as specified in the part of the constitution above quoted. In case of a conflict between the copies so filed, and the copy, if any, attached to the concurrent resolution, the latter would prevail. No judicial proceeding has been provided in which the inquiry whether or not such copy is a true copy can be made or in which the question can be determined, or in

which a mistake, if one was made, can be corrected. The imperative reasons upon which that doctrine rests are clearly and forcibly set forth in the two decisions cited and need not be repeated here.

The petitioner suggests that under this doctrine it would be within the physical power of the legislature, if it were disposed to act in bad faith, to impose upon a city a charter for its government wholly different from the one which the people of the city had ratified. One answer to this objection is that the courts will not impute bad faith to the legislative department of the state. Another is that, even assuming that the same result might be caused by a mistake, the matter of the formation and government of such municipal corporations is political; that it does not determine private rights nor involve due process of law (*People* v. *Ontario,* 148 Cal. 634 [84 Pac. 205]; *People* v. *California Fish Co.,* 166 Cal. 606 [138 Pac. 79]), and that the remedy, if any is desired, is to be provided by the legislature. In view of the fact that during the seventy-two years of the existence of this state in the vast mass of laws enacted no instance of such bad faith, nor any serious mistake, has occurred, the necessity for a remedy does not seem urgent. The possibilities of dangers from such occurrences are inconceivably less detrimental to the public good than would be the difficulties produced by the doctrine that extrinsic evidence could be given to show an error in the official record of general or local laws and that no one could be assured that he was acting in accordance with law at any time, because he could not foresee that some other person would not be able to discover and prove an error which had eluded his own search.

The decision in *People* v. *Gunn,* 85 Cal. 238 [24 Pac. 718], as we understand it, is not contrary to the above. It holds that in a *quo warranto* proceeding the validity of such charter may be disputed, not by showing that the copies thereof officially filed as aforesaid are erroneous, but by showing that the election at which it was ratified by the people of the city was not lawfully held, and that point was put upon the ground that such ratification was a condition precedent to the power of the legislature to approve the charter, one for which the legislature was not responsible, and one into which it could not inquire, and, hence, that

it· was a judicial question for the courts to determine. If there is anything in that decision that is contrary to the doctrine of *Sherman* v. *Story* it must be deemed to have been overruled by the decision in *Yolo Co.* v. *Colgan, supra.*

Anything in the opinion hereinbefore rendered suggesting that the accuracy of such copies might be disputable in some other proceeding and leaving that question open is to be considered as withdrawn.

The application by the petitioner for a rehearing is denied.

Wilbur, J., Lawlor, J., Lennon, J., Sloane, J., and Waste, J., concurred.