[No. C042014. Third Dist. Oct. 7, 2003.]

MARY GRACE O. DE ASIS, Plaintiff and Appellant, v.
DEPARTMENT OF MOTOR VEHICLES et al., Defendants and
Respondents.

594

COUNSEL

Mexican American Legal Defense and Educational Fund, Hector O. Villagra, Belinda Escobosa Helzer; Legal Aid Foundation of Los Angeles, Michael J. Ortiz, Rosa Fregoso and Susana Martinez for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Louis R. Mauro, Assistant Attorney General, and Christopher E. Krueger, Deputy Attorney General, for Defendants and Respondents.

OPINION

**SCOTLAND, P. J.**—During the 2001–2002 Regular Session of the Legislature, both the Assembly and the Senate passed Assembly Bill No. 60 to allow aliens who do not have a Social Security number to obtain a California driver's license or a California identification card if they have petitioned, or are the beneficiaries of a petition, for lawful immigration status or an extension of legal presence in the United States. Assembly Bill No. 60 was sent to enrollment on September 14, 2001, and, plaintiff alleges, the bill went to the Governor on October 2, 2001. Soon thereafter, the Chief Clerk of the Assembly retrieved Assembly Bill No. 60 from the Governor's Office and returned it to the Legislature, where it was withdrawn from enrollment and placed in the Legislature's inactive file on motion of the bill's author. The following year, the Legislature returned Assembly Bill No. 60 to enrollment and sent it to the Governor, after which he vetoed the legislation.

Prior to the Governor's veto, plaintiff Mary Grace O. De Asis, whose application for a California identification card was denied because she did not have a Social Security number, filed a petition for writ of mandate and

complaint for declaratory and injunctive relief, alleging that Assembly Bill No. 60 became law by virtue of the Governor's failure to approve or veto the bill in a timely manner after it was sent to him on October 2, 2001. (Cal. Const., art. IV, § 10, subd. (b)(1).) Thus, she sought to compel the Department of Motor Vehicles and its director (DMV) to implement Assembly Bill No. 60.[1]

Finding that the Chief Clerk of the Assembly retrieved Assembly Bill No. 60 "shortly after" it was enrolled on September 14, 2001, thereby "cut[ting] short the presentation period . . . provide[d] to the Governor for considering legislation," the trial court concluded that Assembly Bill No. 60 did not become law as plaintiff claimed. Hence, the court sustained DMV's demurrer without leave to amend and entered a judgment of dismissal.

For reasons that follow, we reject plaintiff's claims on appeal. ■ As we will explain, when the Legislature and the Governor acquiesce in the retrieval of a bill after enrollment but before expiration of the 30-day time period allotted to the Governor to deliberate on the bill, courts will not interfere with that decision. And since such retrieval deprives the Governor of the full period in which to deliberate on the bill, it cannot become law without the Governor's signature because the bill has not been presented to the Governor within the meaning of article IV, section 10 of California's Constitution.

Accordingly, the trial court correctly concluded that Assembly Bill No. 60 did not become law, and we shall affirm the judgment of dismissal.

## BACKGROUND

When Assembly Bill No. 60 was introduced, the law required an application for a California driver's license or California identification card to include the Social Security number of the applicant. (Veh. Code, §§ 1653.5,

---

[1] When the Governor allows a bill to become law without his signature, he is required to authenticate the bill by causing the Secretary of State to certify that fact and deposit it with the laws in the Office of the Secretary of State. (*Parkinson v. Johnson* (1911) 160 Cal. 756, 761 [117 P. 1057]; see Gov. Code, § 9516.) When a bill is properly enrolled, authenticated, and deposited in the Office of the Secretary of State, it becomes conclusive evidence of the enactment of the bill. (*Parkinson v. Johnson, supra,* 160 Cal. at p. 761.) The requirement that he cause the bill to be authenticated and deposited with the Secretary of State is mandatory and may be compelled by writ of mandate. (*Harpending v. Haight* (1870) 39 Cal. 189, 209–213.) But plaintiff does not seek mandate against the Governor. Instead, she seeks to compel a state agency, DMV, to look beyond the duly authenticated laws on deposit in the Office of the Secretary of State, to look into the legislative process, and to determine for itself that a bill has become law. Because DMV does not contend that it is not a proper party or that the Governor is an indispensable party, we do not address such questions.

12800, 12801.) Accordingly, a person who did not have a Social Security number could not obtain a California driver's license or California identification card.[2]

Assembly Bill No. 60 would have enabled some persons who cannot obtain a Social Security number to obtain a California driver's license or California identification card by using an alternative form of identifier.[3]

The complete bill history prepared by the Assembly reflects that Assembly Bill No. 60 was approved by the Assembly and sent to the Senate on June 7, 2001. Assembly Bill No. 60 was approved by the Senate with amendments on September 14, 2001, and that same date the bill was sent for enrollment after the Assembly concurred in the Senate's amendments. The complete bill history does not reflect that Assembly Bill. No. 60 was actually presented to the Governor. Rather, the next entry on January 14, 2002, shows that the bill was withdrawn from enrollment and placed in the inactive file upon motion of its author.

On August 20, 2002, the Legislature withdrew Assembly Bill No. 60 from the inactive file and returned the bill to enrollment. Some time thereafter, Assembly Bill No. 60 was presented to the Governor, who vetoed the bill on September 30, 2002.

In her complaint, plaintiff alleges that on September 15, 2001, after both houses had approved Assembly Bill No. 60, the Legislature adjourned for a joint recess to reconvene in 2002. She further alleges, on information and belief, the following: (1) on or about October 2, 2001, Assembly Bill No. 60 was enrolled and sent to the Governor; (2) the Chief Clerk of the Assembly "then retrieved [the bill] from the Governor's desk and returned it to the

---

[2] Federal regulations provide that a Social Security number can be assigned only to a United States citizen, or an "alien lawfully admitted to the United States for permanent residence or under other authority of law permitting [the alien] to work in the United States," or an "alien who is legally in the United States . . . for a valid nonwork purpose." (20 C.F.R. § 422.104(a) (2001).)

[3] DMV asks us to take judicial notice of excerpts from the Assembly Daily Journal for the 2001–2002 Regular Session of the Legislature, the Complete Bill History for Assmebly Bill No. 60, and an excerpt from The Constitution of the State of California, edited by Edward F. Treadwell (5th ed. 1923). The request is proper because we may take judicial notice of the public and private official acts of the legislative, executive, and judicial departments of this state. (*Davis v. Whidden* (1897) 117 Cal. 618, 623 [49 P. 766]; Evid. Code, § 452.) We also may always resort to appropriate books and documents of reference for our aid in resolving issues. (*Davis v. Whidden, supra,* 117 Cal. at p. 623.) Plaintiff opposes the request, asserting the materials are irrelevant. However, in taking judicial notice, we do not thereby determine that the materials necessarily are relevant. That is a matter we must consider in addressing the issues presented on appeal. Hence, we grant the request for judicial notice.

Legislature"; and (3) the asserted reason for retrieving Assembly Bill No. 60 was not based upon "any clerical error," but because "the bill was mistakenly sent to the Governor."[4]

The complaint alleges that the retrieval of Assembly Bill No. 60 from the Governor was ineffectual because the Chief Clerk of the Assembly lacked the authority to do so. It follows, the complaint claims, that when the Governor failed to act upon the bill in the 30-day time period allotted by the Constitution, it automatically became law. (Cal. Const., art. IV, § 10, subd. (b)(1).)

## DISCUSSION

Article IV, section 10, subdivision (a) of California's Constitution provides: "Each bill passed by the Legislature shall be presented to the Governor. It becomes a statute if it is signed by the Governor. The Governor may veto it by returning it with any objections to the house of origin, which shall enter the objections in the journal and proceed to reconsider it. If each house then passes the bill by rollcall vote entered in the journal, two thirds of the membership concurring, it becomes a statute."

Article IV, section 10, subdivision (b)(1) of California's Constitution provides: "Any bill, other than a bill which would establish or change boundaries of any legislative, congressional, or other election district, passed by the Legislature on or before the date the Legislature adjourns for a joint recess to reconvene in the second calendar year of the biennium of the legislative session, and in the possession of the Governor after that date, that is not returned within 30 days after that date becomes a statute."

As we have noted, plaintiff claims that Assembly Bill No. 60 was sent to the Governor on or about October 2, 2001, that the Chief Clerk of the Assembly had no authority thereafter to retrieve the bill, and that when the Governor neither signed nor vetoed Assembly Bill No. 60 within 30 days of October 2, 2001, the measure automatically became law.

DMV notes there is nothing in the record to establish that Assembly Bill No. 60 "had *ever* been presented to the Governor" before it was withdrawn from enrollment. Nevertheless, DMV goes on to address the merits of

---

[4] Plaintiff suggests Assembly Bill No. 60 was withdrawn from enrollment at the request of Governor Davis because he wanted, in her words, "to avoid having to sign or veto the bill." For this proposition, plaintiff quotes journalists' claims that the Governor wanted to " 'toughen up the identification requirements in [the] bill' " but did not want to have to veto it " 'because a veto would have alienated Latino voters.' " However, these suggestions are not supported by the appellate record, to which we are bound.

plaintiff's claim, assuming that Assembly Bill No. 60 in fact went to the Governor prior to its retrieval by the Chief Clerk of the Assembly. So shall we. For purposes of demurrer, we will accept plaintiff's factual allegations as true. The issue presented is whether those factual allegations, if true, establish a cause of action upon which relief may be granted.

## A

We begin our analysis by noting that the Governor acquiesced in the retrieval of Assembly Bill No. 60. Therefore, we are not concerned with whether the Legislature can compel the Governor to allow retrieval of a bill that has been sent to him and, if so, the circumstances in which, or the formalities by which, the Legislature could do so. The Legislature also acquiesced in the retrieval of the bill. Thus, both parties to the lawmaking function acquiesced in the retrieval of the bill, neither of them asserts that retrieval was ineffective or that presentation to the Governor was complete, and neither of them maintains that Assembly Bill No. 60 became law by the passage of time.

In this case, we are confronted with a private person's claim that, regardless of the views of the Governor and the Legislature, Assembly Bill No. 60 became law without the Governor's approval. We cannot agree.

## B

Plaintiff's claim for relief is premised upon her argument that the retrieval of Assembly Bill No. 60 by the Chief Clerk of the Assembly (Chief Clerk) was ineffectual because he had no authority to take the bill back once it was sent to the Governor by the Legislature. Consequently, she contends, the constitutional deadline for the Governor to act on the bill remained in effect.

Plaintiff concedes that, in some instances, the Chief Clerk does have authority to retrieve a bill from the Governor's Office. Her argument is not that the Chief Clerk lacks all authority to retrieve a bill, but that his reason for doing so in this instance was insufficient. Thus, plaintiff wants the court to determine, as a question of fact, whether the Chief Clerk's action was within his authority. We decline the invitation.

"The law-making power of the state is vested, by the constitution, in the legislature; and while the constitution has prescribed the formalities to be observed in the passage of bills and the creation of statutes, the power to determine whether these formalities have been complied with is necessarily vested in the legislature itself, since, if it were not, it would be powerless to enact a statute. The constitution has not provided that this essential power thus vested in the legislature shall be subject to review by the courts, while it

has expressly provided that no person charged with the exercise of powers properly belonging to one of the three departments—the legislative, executive, and judicial—into which the powers of the government are divided, shall exercise any functions appertaining to either of the others." (*County of Yolo v. Colgan* (1901) 132 Cal. 265, 274–275 [64 P. 403].)

■ Since the Legislature is vested with the exclusive authority to determine whether the formalities for enactment of a statute have been fulfilled, it follows that a court cannot retry, as a question of fact, the Legislature's determinations. "The authority and duty to ascertain the facts which ought to control legislative action are, from the necessity of the case, devolved by the constitution upon those to whom it has given the power to legislate, and their decision that the facts exist is conclusive upon the courts, in the absence of an explicit provision in the constitution giving the judiciary the right to review such action." (*Stevenson v. Colgan* (1891) 91 Cal. 649, 652 [27 P. 1089]; see also *County of Yolo v. Colgan, supra,* 132 Cal. at p. 271.)

The Legislature does not contend that Assembly Bill No. 60 was presented to the Governor in 2001. Rather, Assembly records reflect that, after the retrieval of the bill, on motion of the author and with unanimous consent, the bill was withdrawn from engrossing and enrolling and was sent to the inactive file. Later, in August 2002, the bill was withdrawn from the inactive file and returned to enrollment, and was then presented to the Governor. By these actions, the Legislature necessarily determined that the retrieval of the bill by the Chief Clerk was proper and effectual. It is not competent for a court to retry that determination as a question of fact.

### C

Nonetheless, plaintiff suggests that, once a bill is presented to the Governor, he "cannot give up his opportunity to consider the bill," i.e., allow the Legislature to retrieve it. We disagree for reasons akin to those expressed in *Eber Bros. Wine & Liquor Corporation v. United States* (1964) 167 Ct.Cl. 665, 337 F.2d 624 (hereafter *Eber Bros.*).

The court in *Eber Bros.* was called upon to interpret when a bill passed by Congress was presented to the President for his consideration and, thus, whether the bill became law because the President failed to veto it within the time prescribed by the Constitution. (*Eber Bros., supra,* 337 F.2d at p. 625.) The government asserted that when Congress sent the bill to the President while he was out of the country, it was not presented to him until his return. The plaintiff took the position that "bills are customarily presented to the President through delivery to the White House" and that without an explicit agreement between the legislative and executive branches, "that practice cannot be altered . . . ." (*Id.* at p. 626.)

Ruling in the government's favor, the court reasoned that, while either the President or Congress could insist that certain formalities attend the presentation of a bill to the President, "[w]ithin the constitutional scheme, there is large leeway, through mutual arrangement and understanding, for the President and Congress to accommodate each other's needs and interests." (*Eber Bros., supra,* 337 F.2d at p. 629.) The court concluded that "presentation can be made in any agreed manner or in a form established by one party in which the other acquiesces . . . ." (*Ibid.*)

Here, neither the Governor nor the Legislature maintains that the retrieval of Assembly Bill No. 60 by the Chief Clerk was ineffectual or that the presentation requirement (see pt. D, *post*) was fulfilled. Both of the parties to the lawmaking function, the Legislature and the Governor, acquiesced in the action of the Chief Clerk. Unless the Constitution expressly requires otherwise, a court should not interfere with the means by which the Governor and the Legislature accommodate each other's needs and interests.

Because the Constitution does not expressly prohibit the retrieval of a bill once it has been sent to the Governor, and since the Governor and the Legislature acquiesced in the retrieval of Assembly Bill No. 60, we should not hold that the retrieval was ineffectual.

D

In any event, we conclude that Assembly Bill No. 60 did not become law based upon the Governor's inaction because it was not left with him for the period allotted to him to act upon the legislation.

In *Harpending v. Haight, supra,* 39 Cal. 189, the California Supreme Court addressed what is required to effectuate a "return" of a bill to the house of origin. It concluded: "There can be no doubt whatever of the meaning of the word 'return,' as used in this connection in [former article IV, section 17 (now article IV, section 10) of California's] Constitution. As applicable to the bill itself, it is equivalent to the word 'presented,' as previously used in the same sentence. The bill must, before it becomes a law, be 'presented to the Governor.' It might be merely exhibited to that officer; and even if it should be immediately thereafter taken away or withdrawn, it might be contended that it had, nevertheless, been 'presented' within the very letter of the Constitution. But when we come to reflect that the only purpose for which the bill is to be 'presented to the Governor' is to afford him an opportunity to deliberately consider its provisions and prepare his objections, if any he have, to its passage, we would instinctively reject such a presentation as being fictitious—merely spurious—and certainly not that one contemplated by the Constitution, because it would defeat, rather than promote, the very object intended." (*Id.* at pp. 198–199.)

■ In other words, a bill is not presented to the Governor unless it is in the physical possession of the Governor for a period of time, not more than 30 days, necessary to permit the Governor to deliberate on the bill (the presentation period). The Governor's act of returning a bill to the Legislature is "a step taken by which his own time for deliberation is ended, and . . . the bill itself [is] put beyond the [Governor's] possession." (*Harpending v. Haight, supra*, 39 Cal. at p. 199.)

Plaintiff concedes that shortly after Assembly Bill No. 60 was sent to the Governor, the Chief Clerk retrieved it from the Governor's Office and returned it to the Legislature. Because the bill was not left in the Governor's possession for the presentation period, it follows from the decision in *Harpending v. Haight, supra*, 39 Cal. 189, that Assembly Bill No. 60 was not presented to the Governor within the meaning of the Constitution.

Plaintiff would have this court indulge in a fiction that the presentment requirement was satisfied, because, in her view, the Chief Clerk lacked authority to retrieve the bill from the Governor. However, regardless of whether he had the authority to retrieve the bill, the fact is that he did so. ■ The Chief Clerk is an employee of the Legislature who is charged with carrying out legislative directions. (Gov. Code, §§ 9171, 9191.) When directed by the Legislature to present a bill to the Governor, he must do so by taking the bill to the Governor and leaving it in the Governor's possession. (*Harpending v. Haight, supra*, 39 Cal. at pp. 198–199.) By failing to leave Assembly Bill No. 60 in the Governor's possession for the presentment period, the Chief Clerk did not present the bill to the Governor as required by the Constitution.

E

Plaintiff's position would have severe consequences if it were accepted. Since plaintiff concedes that the Chief Clerk has some authority to retrieve a bill after it has been sent to the Governor, to conclude that a court may later second-guess the Chief Clerk's reasons for doing so would place the initial onus on the Governor. Thus, when the Chief Clerk asks to retrieve a bill, the Governor would be required to inquire and assess the sufficiency of the reasons for the request. If the Governor finds that the reasons are sufficient and permits retrieval, he could later be hailed into court to defend his decision. If the court finds that the reasons were insufficient, then the Governor will have been denied the constitutional power to review the bill to determine whether he has objections to its passage. The Governor should not be cut out of the constitutional process through such after-the-fact judicial second-guessing.

The answer is simple. When the Chief Clerk retrieves a bill from the Governor, he thereby curtails the presentation period required by the Constitution. (*Harpending v. Haight, supra*, 39 Cal. at pp. 198–199.) If the Legislature determines that the retrieval was inappropriate, it can direct the Chief Clerk to promptly fulfill the presentation requirement by providing the Governor with the full period for review of the bill. If the Legislature acquiesces in the retrieval of the bill, then courts should not second-guess that determination. This procedure is efficacious and adds certainty to the law. Most importantly, it leaves the lawmaking authority, including the power to determine whether formalities for enactment of a law have been fulfilled, in the body that is exclusively vested with that authority by the Constitution. (*County of Yolo v. Colgan, supra*, 132 Cal. at p. 275; *Stevenson v. Colgan, supra*, 91 Cal. at p. 652.)

F

For the reasons stated above, the trial court properly dismissed plaintiff's lawsuit.

## DISPOSITION

The judgment is affirmed.

Raye, J., and Robie, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 23, 2003.